Order accordingly.

---

THE JEROME PARK COMPANY, Plaintiff, *against* THE BOARD OF POLICE OF NEW YORK, Defendants.

[SPECIAL TERM.]

(Decided October, 1882.)

The business of bookmaking—described as the making of a memorandum by any person, upon his own book or paper, of his own bet or wager—is within the prohibition, in chapter 178 of Laws of 1877, of recording of bets or wagers, although the practice of bookmaking was unknown at the time of the passage of the act; such practice being within the letter of the statute, and the evident intent of the legislature in passing the act being to suppress the unlawful business of betting or gambling in any and every form.

MOTION for an injunction.

The facts are stated in the opinion.

*William A. Beach*, for plaintiff.

*William C. Whitney*, for defendants.

VAN BRUNT, J.—The plaintiffs in this action seek an injunction to restrain the defendants from interfering with the business of book-making upon the plaintiffs' premises, which are used as a race-course.

The plaintiffs in their complaint allege that among other kinds of business, the exclusive right during such meeting to prosecute the business of book-making, as it is called, on said premises, has heretofore and during all of the said meetings in the years 1878, 1879, 1880, and 1881 been sold to various parties, and has in each year realized a very large sum of money, and during said years the business has been carried on openly and without interference by the defendants, and without any objection on the part of the law authorities; and the plaintiffs further allege, upon information and belief, that during said years other associations of the character of said club, within this state, have generally sold said privilege of book-making at each of their periodical race meetings, and that the purchasers of the privilege have been protected by the police and law authorities of the localities where such associations existed, and that for certain days upon which races were to be held in the year 1882, the plaintiffs had, for a valuable consideration, sold to certain persons the privilege of book-making, as it is called, within the inclosure on the premises at Jerome Park, during said race meeting, and guaranteed to the purchasers thereof the complete enjoyment of said privilege.

The complaint further alleges that book-making, as it is commonly called, is merely the making of a memorandum upon his own book or paper, by any person, of his own bet or wager upon any issue or event then unknown or undeci-

ded.    That it is simply an aid to the memory of a transaction or transactions theretofore made by the individual who makes the memorandum.

The complaint further alleges that at the time of the passage of the act of 1877, hereinafter referred to, book-making as now practised was unknown, and that said act was intended to remedy certain evils then existing.    The statute is entitled "An act in relation to bets, wagers and pools," and is as follows:

"Section 1.—Any person who shall keep any room or building, or any part or portion of any room or building, or occupy any place upon public or private grounds, anywhere within the state, with apparatus, books or paraphernalia for the purpose of recording or registering bets or wagers, or of selling pools, and any person who shall record or register bets or wagers or sell pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast, or upon the result of any political nomination, appointment or election, or being the owner, lessee or occupant of any such room, building or part or portion thereof, shall knowingly permit the same to be used or occupied for any of the purposes aforesaid, or shall therein keep, exhibit, or employ any device or apparatus for the purpose of registering or recording such bets or wagers or the selling of such pools or shall become the custodian or depositary for hire or reward of any money, property or thing of value staked, wagered or pledged, as aforesaid, upon any such result, such person shall be deemed guilty of a misdemeanor, and shall, upon conviction, be punished by imprisonment in the county jail for not more than one year, or by fine not exceeding two thousand dollars, or by both such fine and such imprisonment."

This language, it is conceded by the plaintiffs' counsel, if literally construed, would prohibit a man from making a record of his own bet in his private memorandum-book.

But it is claimed that, as such a construction leads to an absurdity, it must be rejected, and that the words of the statute prohibiting the recording of bets have reference to

the recording of bets with the instruments, books and paraphernalia referred to in the previous part of the statute.

In the case of *Smith* v. *People* (47 N. Y. 30), Mr. Justice ALLEN says, in reference to the construction of statutes, that effect must be given to the intent of the legislature, whenever it can be discerned, though such construction seem contrary to the letter of the statute. That intent must be primarily sought in the language of the statute, and if the words employed have a well understood meaning, are of themselves precise and unambiguous, in most cases no more can be necessary than to expound them in their natural and ordinary sense. The words in such cases ordinarily best declare the intention of the legislature *(Sussex* v. *Peerage*, 11 Clark & F. 86; *Newell* v. *People*, 7 N. Y. 97; *McCluskey* v. *Cromwell*, 11 N. Y. 593). These rules are elementary, but it is equally well settled that words absolute of themselves, and language the most broad and comprehensive, may be qualified and restricted by reference to other parts of the same statute in which they are used, and to the circumstances and facts existing at the time and to which they relate or are applied. A literal interpretation of words in most common use, and having a well defined meaning as ordinarily used, would not unfrequently defeat rather than accomplish the intent of the party using them. If, in reading a statute in connection with other statutes passed at or about the same time, a doubt exists as to the force and effect the legislature intended to give to particular terms—that is, as to the meaning which it was intended they should bear and have in the connection in which they are used—it is also competent to refer to the circumstances under which and the purposes for which a statute is passed to ascertain the intent of the legislature. The ground and cause of the making of a statute explain the intent.

My attention has also been called to the rule as announced by Smith in his Commentaries on Statutory and Constitutional Construction, who says:

"Section 486. Every interpretation that leads to an ab-

surdity ought to be rejected. By this is meant that no such construction should be put upon a statute as would lead to any absurd consequences. This rule is founded upon the presumption that the legislature did not intend an absurdity, hence, as that intention is to be ascertained, this presumption leads the mind to the conclusion that any construction which would lead to such consequences is not the true one. By an absurdity, in the sense in which we now use the term, we mean not only that which is physically impossible, but also what is morally so. We regard that to be morally impossible which is contrary to reason, or, in other words, that which could not be attributed to a man in his right senses."

"Section 518. The reason for the above rule seems to be that when a particular construction of a statute is applied to a case which it seems by its terms to include, and there follows from such a construction an absurd consequence, respect for the legislature will induce the court from thence to conclude that some other construction, which will not produce such a consequence, ought to be adopted. Hence every construction which leads to an absurdity ought to be rejected. But the construction should be such as will avoid an absurdity."

It cannot be claimed, however, that if by an act of the legislature an attempt is made to reach an evil then existing, and language is used in such act more comprehensive than necessary to reach the evil as then practiced, that such act cannot be made to apply to a new development of the evil, although within the letter of the statute, merely because the evil is practiced in a different form from that in which it was practiced at the time of the passing of the act.

By the Revised Statutes all bets, wagers and stakes made to depend upon any race or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event whatever, were declared to be unlawful.

The statutes then provide that all betting contracts shall be void and prescribe certain penalties.

This is a clear declaration that betting and gambling are

unlawful, and persons engaged in the pursuit or business of betting or gambling are pursuing an unlawful occupation, and the evident intent of the legislature by the passage of the act of 1877 was to suppress such unlawful business or occupation if possible, and for that purpose they used the most general and comprehensive terms, so that its provisions could not be escaped even if new plans or devices were resorted to, in order to avoid the legislative enactments. They mention, therefore, the means then used by persons following the unlawful business, and prohibit the use of such means; and then go on and in the most general and positive language prohibit the doing of the one thing which is necessary to be done in order to carry on the business of gambling in any form, viz., the recording or registering of bets and wagers. The legislature, it may well be argued, had in view the fact that bets and wagers to any extent could not be made unless a record was kept in some way or another, and as they intended to suppress gambling in any and every form, they prohibited the making of the record as the most ready way of reaching the evil.

It may be true that this construction would prohibit the making by a private person of a record of his own bet or wager; but as the bet or wager is of itself unlawful, it can not be considered a great invasion of private rights by the legislature to prohibit the record of such unlawful bet or wager, if, in their opinion, the great evil of betting or gambling can only be suppressed in this way.

The papers in this case, however, show that it is not the interference of the defendants with private individuals which is complained of, but with persons who follow the business of gambling—the very persons whom the legislature sought to reach by the act of 1877, under no matter what form they might carry on their vocation.

The complaint in this action alleges that the plaintiffs have farmed out this business to certain parties who have the exclusive right to carry it on, and it is the interference of the defendants with the carrying on of this business

which is complained of. In view of the fact that such business is unlawful, or at least the contracts made in such business are unlawful, certainly no forced construction of the statute can be indulged in to further its continuance, nor can it be presumed that the legislature, although in language prohibiting it, did not intend to do so.

The whole course of legislation shows that betting and gambling are looked upon with disfavor, and that the legislature have endeavored to prevent them in every way possible, undoubtedly believing that their suppression would result in benefit to the people at large.

I am of the opinion, therefore, that the business of bookmaking, as described in the plaintiffs' complaint, is unlawful, and that no injunction should issue in this action.

Motion denied, with $10 costs to abide final event.

Order accordingly.