·(4 App. Div. 76.)

## PEOPLE ex rel. STURGIS v. FALLON, Warden.

(Supreme Court, Appellate Division, First Department. April 17, 1896.)

**1. GAMING—BOOKMAKING.**
A clerk who attends his employer on a race track and records in a book bets which his employer makes on the races, but makes no bets himself, is not guilty of making books or occupying a place on the ground for the purpose of recording bets, within the prohibition of Pen. Code, § 351.

**2. SAME—PROHIBITORY LEGISLATION—CONSTITUTIONAL LAW.**
Laws 1895, c. 570, § 17, providing that where a person records a bet on a horse race he is to forfeit the value of any money or property wagered, to be recovered in a civil action by the person with whom such wager was made, does not authorize betting, and therefore does not violate Const. 1895, art. 1, § 9, which provides that no "lottery, sale of lottery tickets, pool selling, bookmaking, or any other kind of gambling hereafter be authorized or allowed in this state. The legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section."

Appeal from court of oyer and terminer, New York county.

Joseph Sturgis was arrested on a charge of violating Pen. Code, ·§ 351, and was committed to jail to await the action of the grand jury. He was discharged on a writ of habeas corpus, and John Fallon, the prison warden, appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and O'BRIEN, JJ.

John D. Lindsay, Noah Davis, and Benjamin Steinhardt, for appellant.

Elihu Root, J. S. Auerbach, and Delancey Nicoll, for respondent.

RUMSEY, J. In the month of November, 1895, complaint was ·made to one of the city magistrates that the relator, Sturgis, was guilty of violating section 351 of the Penal Code; and thereupon, upon information having been laid before the magistrate, he issued a warrant for the arrest of Sturgis for the crime complained of. Sturgis was arraigned before the magistrate, and an examination was had, as the result of which it was determined that there was probable cause to believe that he was guilty of violating section 351 of the Penal Code, and he· was committed to the city prison to .await the action of the grand jury upon the charge made against him. He sued out this writ of habeas corpus, and upon the return to the writ the court issued a writ of certiorari, directed to the city magistrate, who in his return transmitted to the court all the papers upon which the warrant of commitment was issued. The court ·of oyer and terminer, upon consideration of all the papers, determined that there was no reasonable ground to believe that Sturgis was guilty of the crime of which he was accused, because the .acts done did not constitute a crime, and discharged him from imprisonment. From the order discharging him, this appeal is taken.

The facts are that Sturgis was the clerk of one Jones. On the ·day in question, the 24th of October, he went with Jones to the Morris Park race track, which was a race course authorized by, and ·entitled to the benefits of, chapter 570 of the Laws of 1895, where

there was about to take place a running race, which was held pursuant to section 3 of that statute. Sturgis, following Jones about the track, recorded in a book which he had for that purpose a number of bets which Jones had made with people whom he knew. This was the act of which he was accused, and this was the act which the city magistrate held to constitute the crime. The thing which Sturgis did, as we have seen, was to record bets or wagers upon certain horses, which Jones had made. He did nothing else. It is quite clear to us that he cannot be said to have been guilty of book-making. Nor can it be said that he occupied any place upon the grounds for the purpose of recording bets or wagers, within the terms of section 351 of the Penal Code. He walked up and down, following his employer, who made the bets, and recorded them as they were made. This is not the occupying of any place with books, papers, and apparatus, or paraphernalia, for the purpose of registering bets or wagers, within the provisions of that statute. The only thing he did, therefore, was to record or register bets. He made no bet himself. This act of his was punishable by section 351 of the Penal Code in every case "except when another penalty is provided by law." Sturgis claimed that his case was within the exception, because by section 17 of chapter 570 of the Laws of 1895 an exclusive penalty had been provided by law for the registering or recording of any bet or wager on the result of any contest of speed of horses, and that, being within the provisions of that law, he was thereby relieved from the penalty imposed by section 351 of the Penal Code. The answer made by the people to this contention is that section 17 of chapter 570 of the Laws of 1895 is unconstitutional, because it violates section 9 of article 1 of the constitution. That section, so far as it applies to this case, is as follows:

"Nor shall any lottery or the sale of lottery tickets, pool-selling, book-making or any other kind of gambling hereafter be authorized or allowed within this state; and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section."

Before that provision of the constitution took effect, it was clearly within the province of the legislature to forbid the making of bets upon races, or even the recording of such bets, and that they had already done. The registering of these bets, and indeed the betting itself, was not a violation of the common law, and it only became unlawful when the legislature by statute forbade it; and therefore, up to the time when the constitutional amendment was passed, the legislature had full power over the matter. When the constitution took effect, it plainly became the duty of the legislature to pass such acts as to them should seem proper to prevent these offenses. This they undertook to do by the amendment of section 351 of the Penal Code, and by the passage of section 17 of chapter 570 of the Laws of 1895. These, having been passed at the same time, are to be read together, and it seems to us that they constitute a well-arranged and consistent scheme for the prevention of the acts which are specified in section 9 of article 1 of the constitution. It must be remembered that the evil which the

people aimed at in passing that constitutional amendment was the sale of lottery tickets, the establishment of lotteries, and pool-selling and book-making, which had been conducted so generally, and under such circumstances, as to become a grave public evil. Other forms of gambling, to be sure, are mentioned, not particularly, because the people deemed it unnecessary to put a constitutional prohibition upon other forms of gambling, for the legislature had already, by stringent laws, taken steps to do that, but because, as is evident from the debates in the convention, it was intended that no opening should be left by which anybody who desired to pursue the business of book-making or pool-selling in some other way than had been pursued before could be able to do so, and thereby evade the constitutional prohibition. For the purpose of carrying into effect that intention, it was thought necessary for the legislature to make stringent laws to prevent the particular acts which were aimed at. But the penalty to be imposed upon these particular acts was entirely within the discretion of the legislature. It is for that body always to prescribe the extent to which they will go in punishing any particular act, or whether or not a particular act shall be prescribed as a crime. In re Bayard, 25 Hun, 546. In doing that, of course, they may take into consideration the gravity of the particular offense; and it would be perfectly proper also to consider the circumstances under which the act was done, for an act done under one set of circumstances may constitute a serious offense, while under other circumstances it might be no offense at all, or at most a very venial one. This was evidently the view of the legislature. They forbade, under serious penalties, the occupying of a place for the purpose of recording bets, because experience had shown that that was one of the incidents of pool-selling and book-making, and if that was prohibited pool-selling and book-making would thereby become much more difficult. They also forbade the recording or registering of bets or wagers, and imposed upon that the same penalty as they had done upon book-making, where it was done under peculiar circumstances. But, as any one can see, there are circumstances under which a bet may be recorded without any very serious harm coming from it; and so the legislature evidently thought, and therefore they provided that the acts which were forbidden by section 351 should be punished as therein prescribed, except when another penalty was provided by law. This, of course, they had the right to do, because the particular penalty which should be provided for any act must be clearly within the discretion of the legislature. If we turn now to section 17 of chapter 570 of the Laws of 1895, we see that it provides that where one, upon a race course entitled to the benefits of that act, records a bet or wager upon a contest of speed of horses, he is to forfeit the value of any money or property so wagered, to be recovered in a civil action by the person with whom such wager is made. The act further provides that that penalty is exclusive of all other penalties prescribed by law. If that act is effective, there is no question that it relieves the relator from the penalty imposed by section 351 of the Penal Code for the act which he did, and takes it out of the

list of crimes, and prescribes for it only a civil penalty, so that he could not be indicted for doing it. Upon an examination of the provision, it is clear, in the first place, that it does not authorize or allow betting or wagering. On the contrary, it prescribes a penalty for it, and therefore, to that extent, it certainly is not obnoxious to the constitutional prohibition. The duty of the legislature was to pass appropriate laws to prevent the offenses aimed at. It was for them to say what laws were appropriate for that purpose, and when they have exercised their discretion in that regard the courts are not at liberty to put themselves in the place of the legislature, and say that, as some other penalty might be more effective in preventing the act, therefore the prescribed penalty is not appropriate. Cooley, Const. Lim. 49, 50. The whole matter was within the control of the legislature. So long as it passed no law to permit or authorize the making of bets or wagers, it was at liberty to do whatever it saw fit by way of preventing them. It might make them crimes, or it might content itself with imposing civil liabilities for them. But whatever it saw fit to do in the matter was clearly within its own discretion, and cannot be reviewed by the courts. It is not necessary for us to consider whether the provisions of section 17 of chapter 570 of the Laws of 1895 are as effective as some other penalties might be to prevent the acts forbidden by the constitution. All that we can say is that it was within the discretion of the legislature to say to what extent they would go in preventing an act when done under certain circumstances, and when they have exercised their discretion the courts have nothing to do with the way in which it has been done. Taking this view of the case, as we must, our conclusion must be that the acts of Sturgis which were the subject of the penalty prescribed by section 17 of chapter 570 of the Laws of 1895 were subject to no other penalty, because the statute makes that penalty exclusive, and therefore he was not guilty of a crime; and the court of oyer and terminer, in discharging him from imprisonment, was right, and its order must be affirmed.

Order affirmed. All concur.