PEOPLE v. WADE.

(Special Sessions of First Division of City of New York. March, 1899.)

GAMBLING—WHAT CONSTITUTES.

Where the evidence showed that defendant carried on the business of selling stocks on prices marked on a blackboard from a stock-quotation ticker, and that there was no purchase of stock by defendant to fill orders received, and no delivery of stock was ever made or contemplated between the parties, and the losses of a customer were limited to the amount of his deposits as a margin, and the fluctuating prices on the ticker alone determined the quotation of profit or loss, it constituted gambling, within Pen. Code, § 343, as amended by Laws June 11, 1889, c. 428, making wagers on dealings in stocks and securities a misdemeanor.

Henry C. Wade was convicted of keeping a betting establishment.

Asst. Dist. Atty. O'Reilly, for the People.
E. Y. Bell, for defendant.

PER CURIAM. The defendant is charged with the violation of section 343 of the Penal Code, which makes it a misdemeanor to keep a gambling and betting establishment. The transactions complained of as constituting gambling were based wholly upon the fluctuations of stock dealt in by the New York Stock Exchange. The defendant carried on business at No. 50 New street, New York, under

the name of the Colonial Stock & Grain Company. His place of business consisted of a room, in which there was a large blackboard on one side thereof, whereon prices of stock were marked as they were received from the stock quotation ticker. In case of what was termed a "purchase," the defendant, upon receipt of a deposit, delivered to the so-called "purchaser" a printed form, with blanks properly filled, as follows:

No.———.　　　　　　　　　　　　　　New York,　　　　1898.

　On three days' notice............................... will deliver

| To———.———. At———. | Date. | Amounts Paid. | Margined to. |
|---|---|---|---|
| | | | |

Provided sufficient money is paid us to keep the price of the above-named article good at all times according to ruling prices on the New York Stock Exchange, New York Consolidated Stock and Petroleum Exchange, Chicago Board of Trade, or any other exchange under the rules of which this contract is open. This contract will be closed and settled if, by the fluctuations of the market in which this commodity or stock is bought and sold, the price reaches the lowest limit herein named; otherwise, it may be closed and settled by order of the person accepting it. All persons accepting this contract agree to the above terms.　　　　　Colonial Stock and Grain Co., Brokers,
　　　　　　　　　　　　　　　　　　50 New Street.

If what was termed a sale was contemplated, an instrument of a similar nature, with the necessary changes, was delivered by the defendant, as follows:

No.———.　　　　　　　　　　　　　　New York,　　　1898.

　On three days' notice ........................... will receive

| To———.———. At———. | Date. | Amount Paid. | Margined to. |
|---|---|---|---|
| | | | |

Provided sufficient money is paid us to keep the price of the above-named article good at all times according to ruling prices on the New York Stock Exchange, New York Consolidated Stock and Petroleum Exchange, Chicago Board of Trade, or any other exchange under the rules of which this contract is open. This contract will be closed and settled if, by the fluctuations of the market in which this commodity is bought and sold, the price reaches the highest limit herein named; otherwise, it may be closed and settled by order of the person accepting it. All persons accepting this contract agree to above terms.
　　　　　　　　　　　Colonial Stock and Grain Co., Brokers,
　　　　　　　　　　　　　　　　　50 New Street.

In each of the transactions had between the complaining witness and the defendant but two shares of stock were involved, and the amount of deposit or margin was $2, representing 1 per cent. of their par value. Of this amount 50 cents were retained by the defendant for what he termed his commission. There was no purchase of stock by the defendant to fill the orders, and no delivery of stock was ever made or contemplated between the parties. All settlements were made in cash, the losses of the customer being limited to the amount

of his deposit.   The fluctuating prices on the stock-quotation ticker alone determined the quotation of profit or loss.   The defendant did not in any way act as broker or agent for the customer, and there was no mention of any dealings with another as his principal.   On the contrary, the evidence clearly shows that the transactions were entirely between the defendant and the customer as principals, and that the brokerage business of the defendant was a mere sham.   The real nature of the transactions being thus shown, it follows that the printed contracts, with the blanks properly filled, while not illegal per se, were subterfuges, and intended as a disguise for gambling. An optional contract for the sale of property is a wager, within the statute, and therefore void, where it is the intention not to sell or deliver the property by the one party, or to purchase it by the other, but merely to settle the difference in money, according to fluctuations on market values.   People v. Todd, 51 Hun, 446, 4 N. Y. Supp. 25, and cases therein cited.   The transactions in that case are strikingly similar in their nature with those here mentioned.   The defendant, Todd, was convicted on November 15, 1887, of keeping a room used for gambling, in violation of section 343 of the Penal Code, which at that time read as follows:

"A person who keeps a room, shed, tenement, tent, booth, building, flat, or vessel or any part thereof, to be used for gambling, or for any purpose or in any manner forbidden by this chapter, or being the owner or agent knowingly lets or permits the same to be so used is guilty of a misdemeanor."

Upon appeal the court reversed the judgment of conviction upon the ground that, although the contract was a wager, and therefore void, the section did not embrace within its scope transactions of the nature in question.   The opinion of the court, handed down in the January term, 1889, concluded as follows:

"There can be no doubt of the objectionable, demoralizing nature of the appellant's business.   It cannot be other than just such traps for the unwary that the legislature hoped to prevent, but which has failed in consequence of the ingenuity displayed in the method adopted to frustrate such design.   But it is not beyond the reach of that body yet, and it is to be hoped that prompt action will be taken to overcome the evil, and to punish the offender by proper and comprehensive enactments.   It is true that devices beyond the sphere of any statute may be employed, but they can be met and crushed by further legislation.   Many subjects have required a multitude of statutes in England and in this country to root out the wrong inveighed against, and the result has been a success.   The transgressor may have short intervals under such a system, but the day of punishment will come at last."

That "prompt action" was taken by the legislature "to overcome the evil" is shown by chapter 428, Laws 1889, approved June 11, 1889, amending section 343 of the Penal Code by adding thereto the words, "or for making any wagers or bets made to depend upon any lot, chance, casualty, unknown or contingent event, or on the future price of stock, bonds, securities, commodities or property of any description whatever, or for making any contract or contracts for or on account of any money, property or thing in action so bet or wagered."   It is plain that the very object of the amendment was to prohibit just such transactions as the ones complained of, and it therefore follows that the defendant is guilty of the offense charged.