## SUPREME COURT—SPECIAL TERM—NASSAU CO.

### Oct., 1912

## THE PEOPLE ex rel. PAUL SHANE v. CHARLES F. GITTENS.

### (78 Misc. 7.)

BETTING AND GAMING*—PENAL LAW, § 986—BOOK-MAKING—ORAL BETS ON HORSE RACES.

Where, after the words " with or without writing " were read into section 986 of the Penal Law by chapter 488 of the Laws of 1910, an information charging the relator with the crime of book-making contains no allegation that relator was a professional gambler or that he made his bets in such a way as to make them " public gambling," but simply charges that while on a race-course he did privately make several oral bets on the result of a horse race, the acts charged do not constitute the crime of bookmaking, and the relator is entitled to his discharge on a writ of habeas corpus.

HABEAS CORPUS to inquire into the cause of relator's detention.

*John J. Graham,* for relator.

*Charles T. McCarthy,* Assistant District Attorney of Nassau county, for People.

*Samuel Marcus,* for Society for the Prevention of Crime.

SCUDDER, J.:

This matter comes before the court on an application by the above named relator to be released from the custody of the above named respondent, on a criminal charge pending against

---

* See notes 6-225, 17-129, 28-152.

relator charging him with committing the crime of " book-making in violation of section 986 of the Penal Law of the State of New York."

The information under which the relator is held charges that one Paul Shane did commit the crime of book-making in violation of section 986 of the Penal Law of the State of New York in manner following to-wit: " On the 6th day of June, 1912, at Belmont Park in the town of Hempstead, Nassau County, N. Y., on the grounds of a private enclosure, known as the grounds and race course of the Belmont Park Racing Association, a domestic corporation owned by said corporation and by it leased on said day to the United Hunts Racing Association, a domestic corporation, where certain trials and contests of skill, speed and endurance of horses, commonly called horse racing, were then and there conducted, of which trials and contests the said Paul Shane was then and there a spectator, having paid the fee required by the said last mentioned corporation, for admission to said grounds, the said Paul Shane while moving about on said grounds, did unlawfully, willfully and privately make several bets or wagers on the result of each of said contests, the said bets or wagers being made by him orally and without the use of paraphernalia or writing, but a note or memorandum of each of said bets or wagers was then and there prepared and written by the opposite party to each of said bets or wagers, stating the name of the horse upon which the particular bet or wager was made and the amount thereof, and the said note or memorandum was thereupon in each case shown to the said Paul Shane by the said opposite party at the request of the said Paul Shane against the form of the Statute in such case made and provided."

The deposition supporting the information reads as follows:

" STATE OF NEW YORK,
    " Nassau County, ss.:
    " Michael Williams, the above named informant, being duly

sworn and examined in relation to the foregoing information, deposes and says:

"I reside in the village of Hempstead, Nassau County, N. Y., and am one of the official deputy sheriffs of Nassau county. I was present on June 6, 1912, at the race meet conducted by the United Hunts Racing Association on the grounds of the Belmont Park Racing Association at Belmont Park in the town of Hempstead, Nassau county, New York. I saw the above named Paul Shane there. He paid the fixed fee of $3.00 to enter the grounds on said day as a spectator of the horse races and trials of speed of horses then and there being conducted. There were six races on said day and during the progress of the day, and, while these races were going on, the said Paul Shane was walking around the grounds and at that time I saw him make bets and wagers with various persons on the result of each and every horse race then and there run. He made the bets orally with these persons at the time, but when the bets and wagers were made, the other party to the bet or wager made a note and memorandum of the same in writing, which note or memorandum set forth the name of the horse or animal then and there bet upon, together the amount of the particular bet and wager, which memorandum or note was then and there shown by the said opposite party to each of said bets and wagers to the said Paul Shane, at his, the said Paul Shane's, request. The public were admitted to the above grounds on payment of a fixed admission fee.

"MICHAEL WILLIAMS.

"Sworn to before me

"June 6, 1912.

"CHARLES F. GITTENS,
"Justice of the Peace,
"Town of Hempstead."

Section 986 of the Penal Law under which relator is held provides:

"§ 986. Pool-selling, book-making, bets and wagers. Any person who engages in pool-selling, or book-making with or without writing at any time or place; or any person who keeps or occupies any room, shed, tenement, tent, booth, or building, float or vessel or any part thereof, or who occupies any place or stand of any kind, upon any public or private grounds, within this state, with books, papers, apparatus or paraphernalia, for the purpose of recording or registering bets or wagers, or of selling pools, and any person who records or registers bets or wagers, or sells pools or makes book, with or without writing, upon the result of any trial or contest of skill, speed or power of endurance, of man or beast, or upon the result of any political nomination, appointment or election; or upon the result of any lot, chance, casualty, unknown or contingent event whatsoever; or any person who receives, registers, records or forwards, or purports or pretends to receive, register, record or forward, in any manner whatsoever, any money, thing or consideration of value, bet or wagered, or offered for the purpose of being bet or wagered, by or for any other person, or sell pools, upon any such result; or any person who, being the owner, lessee or occupant of any room, shed, tenement, tent, booth or building, float or vessel, or part thereof, or of any grounds within this State, knowingly permits the same to be used or occupied for any of these purposes, or therein keeps exhibits or employs any device or apparatus for the purpose of recording or registering such bets or wagers, or the selling of such pools, or becomes the custodian or depositary for gain, hire or reward, of any money, property or thing of value, staked, wagered or pledged, or to be wagered or pledged upon any such result; or any person who aids, assists or abets in any manner in any of the said acts, which are hereby forbidden, is guilty of a misdemeanor, and upon conviction is punishable by imprisonment in a penitentiary or county jail for a period of not more than one year."

Prior to 1910 the words "with or without writing" did not

appear in section 986 of the Penal Law; these words were read into that section by chapter 488 of the Laws of 1910. Before the enactment of this statute under the decision of the Court of Appeals in People ex rel. Lichtenstein v. Langan, 196 N. Y. 260, the facts stated in the information before me would not have constituted the crime of book-making. The question to be decided here is whether the acts alleged in the information are sufficient to constitute the crime of book-making under the amendment of 1910 to said section 986.

The Constitution of the State forbids book-making but does not define what book-making is, and the statute we have quoted forbids engaging in book-making also without defining it, but makes it a distinct and independent offense.

Book-making has been defined in People ex rel. Lichtenstein v. Langan, 196 N. Y. 260. Judge Haight writing for the court and discussing the contention of the district attorney that the laying of odds and orally announcing them constituted book-making within the meaning of the statutes, said (at p. 264): " The term ' book-making ' originally indicated a collection of sheets of paper or other substances upon which entries could be made, either written or printed. But the term has been used in many ways, and in determining its meaning as used in this statute, we must consider the evident purpose and intention of the legislature in enacting the provision in question, giving to the term its ordinary and accepted meaning as it was understood at that time."

The court then goes on to say (p. 265): " The ordinary book-maker is a person who follows the races and becomes fully informed with reference to the skill, speed and endurance of the horses that are entered for races. These horses are taken from one meeting to another of the various racing associations, and thereby the book-makers are enabled to prepare a list of the horses entered for a race, with the odds so arranged as to percentages as to give them a profit whichever the winning horse may be."

The information in that case charged the defendant Langan with "unlawfully, willfully and knowingly to many persons, upon the results of said races and upon various and divers horses that were announced to participate and did participate in said races, quote and lay odds, that is to say did state and publish to many persons the terms on which they    *    *    *    were willing then and there to bet with said persons on said results and against said horses; and did then and there quote and lay odds as aforesaid    *    *    *," reciting the bets made. The court held this information failed to allege acts which constituted the crime of book-making.

This decision was rendered prior to 1910 and before the words "with or without writing" were read into section 986 of the Penal Law by chapter 488 of the Laws of 1910.

Do these words "with or without writing" so change the law forbidding book-making as to constitute a crime of the acts with the commission of which relator is charged, acts which, prior to 1910, did not constitute the crime of book-making under the decision of the Court of Appeals in the case of People ex rel. Lichtenstein v. Langan, or do these acts constitute betting only which has never been made a crime in this State, excepting betting upon the result of a prize fight which is a misdemeanor (Penal Law, § 1712)?

Doubtless, the legislature, by the enactments we are considering, intended to suppress public gambling on race tracks and elsewhere, and to prevent the injury to public morals resulting therefrom. But as said by Judge Vann in the Lichtenstein case: "Private betting and book-making are widely separated both in nature and effect, and the evil, if any, resulting from the one is trifling, while the evil resulting from the other is serious."

Book-making the legislature has sought to suppress by making it a crime to engage in it. Betting the legislature has declared unlawful, but has not made it a crime, except betting on

prize fights.  Engaging in book-making is betting, but ordinary betting on a horse race is not book-making and is not a crime, and when the sum or sums won or lost by betting within the space of twenty-four hours aggregate less than twenty-five dollars it is not punishable; if in excess of this amount, betting is punishable by a fine in an amount of not less than five times the sum so lost or won to be recovered in a civil action by the overseer of the poor.  See Penal Law, §§ 989, 990, 991.

It does not seem probable that, had the legislature intended to make several bets such as those with the making of which the relator is charged punishable by imprisonment for a possible term of one year, it would have declared at the same time that the making of a single bet or several bets exceeding twenty-five dollars in amount was punishable by a fine only in a civil action brought by the overseer of the poor.

As said by Chief Judge Cullen in People v. Lambrix, 204 N. Y. 264; 27 N. Y. Crim. 76, referring to section 986 of the Penal Law before its amendment in 1910:  "It was directed against public gambling and professional gamblers, and, * * * while all gambling has for a long time been illegal in this State, professional gambling and the maintenance of gambling resorts alone have been subjected to the penalties of the criminal law."

The information now before the court contains no allegation that relator was a professional gambler, or that he made his bets in such a way as to constitute his betting " public gambling; " on the contrary it alleged that relator " did  *  *.  *  privately make several bets ·  *.  *  *.".

Under section 986 of the Penal Law the person who is declared guilty of a misdemeanor is " Any person who engages in * * * book-making with or without writing * * *." Relator is charged in the present information with committing " the crime of book-making."

: The Court of Appeals in People v. Bright, 203 N. Y. 73, 26

N. Y. Crim. 377, commenting on the words " who engages " has said: " The phrase ' who engages.' is significant. It means something more than occasional participation. It imports some continuity of practice, just as the epithet ' common ' implies that a common gambler is a person who customarily or habitually or frequently carries on the gambling practices which are denounced by the statute. The underlying idea is the habitual participation in gambling as a money-making pursuit."

The information before me fails to allege the element of professionalism or habitualness on the part of relator. It fails to charge the relator with the public quoting and offering of odds; with the soliciting of bets; with inducing the public to take chances with him in any scheme of odds; with effecting through his methods any exchange of money or property.

As book-making has been defined by the courts its chief elements seem to be lacking in the acts committed by the relator as set forth in the information.

As said by Chief Judge Cullen referring to section 986 of the Penal Law in People ex rel. Lichtenstein v. Langan, supra: " While in reality the statute is directed against gambling, not against its incidents, the law has laid hold of certain incidents on the theory that those being prohibited the evil itself will be suppressed because of the impracticability of carrying on gambling on a large scale without some of the accessories denounced by the statute."

Whether this plan is the best is for the legislature, not for the courts, to determine. The court is powerless to hold that a given act, or a series of acts, constitute a crime, unless they fall within the prohibition of the statute. The remedy for the evil complained of here must come from the legislature. The legislature has made it a crime to bet on prize fights. It can make it a crime to bet on horse races. It has not done so, and the court is powerless to do so. I hold that the legislature, in inserting in 1910 in section 986 of the Penal Law after the words

" book-making " the words " with or without writing," did not intend to make betting a crime but did intend to deal with that form of professional gambling known as book-making.

It was contended on the argument that if the acts alleged in this information constitute a crime, then the directors and persons in charge of the racing association are likewise guilty of a crime, without any intent whatever to violate the law. I agree with the learned district attorney that the answer to this is, that the law requires knowledge of the acts constituting the crime on the part of the persons accused; and the law will not permit the conviction of the owner of a race track who has no knowledge of the fact that book-making (not ordinary betting) is going on upon his premises. It is erroneous to say that any director could be held liable under these conditions, under the present law. Section 973 of the Penal Law of the State of New York, as a penal statute, must be strictly construed. True, there need be no proof of actual knowledge where a thing is clearly and expressly prohibited, for in such a case knowledge is always presumed; but here the thing prohibited is the keeping of a race track used for gambling, and no director could be convicted of keeping a race track used for gambling unless it was proven he had guilty knowledge that the place was, not once or twice, but continually, used for gambling in the form of book-making (not of private betting), and had taken no effective means to stop it.

Counsel for the Society for the Prevention of Crime in his brief asserts: " We cannot escape the conviction that the information * * * purposely avoided setting forth all the acts of Shane," and he expresses grave doubts " whether this case is not collusive."

The recognized standing and high character of the learned district attorney of Nassau county and of the assistant district attorney refute any such insinuation. The information in the case at bar, the court is informed by the assistant district at-

torney, was written by the justice issuing the warrant at his dictation, and set forth all the acts that the informant, Michael Williams, a deputy sheriff of Nassau county, observed in connection with relator's betting.

An information performs to some extent the same office as an indictment and must state with accuracy not only the crime charged, but the facts which constitute the crime so charged as distinct from conclusions of law. I think that information here fails to allege acts which constitute the crime of book-making, the only crime with which relator is charged.

The motion should be granted and the relator discharged from custody, and it is so ordered.

Motion granted.

---

## NOTE ON BETTING AND GAMING.

AT COMMON LAW.

Not indictable at common law. U. S. v. Dixon, 4 Cranch C. C. 107.

Excessive gaming not a common law offense. Jenks v. Turpin, 13 Q. B. D. 555.

Indictable at common law where playing attendant with such circumstances as would in themselves amount to a riot, nuisance, or breach of the peace. U. S. v. Willis, 1 Cranch C. C. 511.

DEFINITIONS.

·The word "gambling" as used in section 343 of the Penal Code, only relates to and covers the games prohibited in preceding sections of chapter 9 of that Code. People v. Todd, 6 N. Y. Crim. 203.

A game is any sport or amusement, public or private. State v. Lark, 4 Ohio S. & C. Pl. Dec. 242.

A contest for success or superiority in a trial of chance, skill or endurance, or any two or all three of these combined. Century Dictionary.

Last definition quoted in Desgain v. Wessner, 161 Ind. 205.

A trial of skill, or of chance, or of skill and chance, between two or more contending parties, according to some rule by which each one may succeed or fail in the trial. Stearnes v. State, 21 Tex. 692.

A thing of chance, skill or trick. Woodcock v. McQueen, 11 Ind. 15.

Billiards held not to be a game of chance, but of skill. People v. Forbes, 52 Hun, 30; 179 N. Y. 164, 152 N. Y. 12.

A slot-machine is a gambling device. Lyman v. Kurtz, 166 N. Y. 274.

A cigar machine, so operated that one gets a cigar for each coin deposited and stands to win additional cigars without further costs, is not a gambling device. Cullinan v. Hosmer, 100 App. Div. 448.

Under laws of 1895, chapter 570, a person who makes or records upon a race course authorized by or entitled to the benefits of this statute, a bet upon a horse race taking place thereon, is subject to the exclusive penalty of the forfeiture of the amount of the bet, to be recovered in a civil action by the person or persons with whom such bet is made, or with whom such money or property is deposited, and is not amenable to the criminal law, and the constitutionality of this statute (since repealed) has been upheld by the court of last resort. People v. Fallon, 152 N. Y. 1; 12 N. Y. Crim. 273.

## CONSTITUTIONAL PROVISIONS.

The provision of the New York State Constitution prohibiting the legislature from authorizing gambling of any kind is not self-executing. People ex rel. Collins v. McLaughlin, 23 N. Y. Crim 92.

## CONSTITUTIONALITY OF STATUTES.

The legislature may enact statutes regulating or absolutely prohibiting gambling. People v. Adams, 176 N. Y. 351; 19 N. Y. Crim. 425.

The statute against policy gambling held constitutional. People v. Flynn, 37 Misc. 87; 16 N. Y. Crim. 278.

Unless the charter of a municipality confers upon it authority so to do the council thereof has no right or power to pass an ordinance to regulate or prohibit gaming or gambling devices, or to prescribe and enforce penalties for a violation of such ordinance. State v. Godfrey, 54 W. Va. 54.

The Fifth Amendment to the Federal Constitution has not been extended by the Fourteenth Amendment to cover the case of a witness called to

answer before the State Magistrate pursuing an inquiry under a State Law. People ex rel. Lewisohn v. Wyatt, 17 N. Y. Crim. 166.

## STATUTORY ENACTMENTS GENERALLY.

For a historical review of legislation in restraint of gambling. See People ex rel. Collins v. McLaughlin, 23 N. Y. Crim. 92.

## SAME—HOW CONSTRUED.

The game played need only be described by name, and it is unnecessary to set forth in a statute the manner in which the prohibited game is played. State v. Carr, 6 Oreg. 133.

Gaming statutes should be strictly construed. Moore v. Chicago, 69 Ill. App. 571.

## ELEMENTS OF CRIME.

There must be a contest, game, or event, upon the result of which a bet or wager may be made. People v. Todd, 51 Hun, 446, 6 N. Y. Crim. 203.

The event upon which the wager depended must have been decided, to constitute gaming. Bagley v. State, 1 Humphrey (Tenn.) 486.

The offense is complete when an offer to bet is made and accepted, although for any cause whatsoever the game should never be played out and the wager lost or won. State v. Welch, 7 Port (Ala.) 463.

It is not necessary that persons be present at the place of game or contest in order that they may participate in the mischiefs of gaming. Betting upon a game of billiards which is being played in New York can be as readily carried on in a distant city, in a room appropriated to that purpose, as in the room where the playing is going on; and if the latter is a gaming room, so must the other be. Nothing seems more unimportant than that the game—the part that in itself is innocent and which only furnishes the occasion and gives opportunity for the criminality—is at a distance. People v. Weithoff, 51 Mich. 203.

## THE BET OR WAGER.

A corporation may give premiums or prizes, when it is incorporated for such a purpose. The words " bets " or " wagers " are not similar in meaning to the words " purses," " prizes " or " premiums." People v. Kelly, 3 N. Y. Crim. Rep. 274.

14

A bet at a legally authorized race course is illegal. People v. Kelly, 3 N. Y. Crim. 272.

To constitute a bet or wager there must be two or more contracting parties, with mutual or reciprocal rights regarding the thing wagered, ordinarily called the stake; each party must jeopardize something and have the chance to make something or recover the stake upon the determination of the uncertain or contingent event in his favor. Jordan v. Kent, 44 How. Pr. 206.

Playing for drinks, lunch, cigars or refreshments is gaming. Hitchins v. People, 39 N. Y. 454.

Playing for the fees for the use of the apparatus with which the game is played in gaming. People v. Cutler, 28 Hun, 465.

Playing the rub to determine which player shall pay for the use of the billiard table is not gaming so as to support an indictment for maintaining a common-law nuisance. People v. Sergeant, 8 Cow. 139.

Racing for a purse, prize or premium offered by a racing or other association is not gaming. People v. Fallon, 152 N. Y. 12, 12 N. Y. Crim. 117.

The fact that each player or competitor is required to pay an entrance fee does not make the transaction a bet. People v. Fallon, 4 App. Div. 82, 11 N. Y. Crim. 273.

But otherwise where the stake is contributed by the participants alone, and the fund so contributed goes to the successful contestant. Stoddard v. McAuliffe, 81 Hun, 524.

ORAL BETTING.

One who receives a sum of money in payment of an oral bet made by him with another at a race track upon the result of a race then and there to be run is not guilty of a crime under section 351 of the Penal Code, as amended by chapter 507 of the laws of 1908. People ex rel. Collins v. McLaughlin, 23 N. Y. Crim. 92.

That part of section 351, Penal Code, which makes one guilty of a misdemeanor who "receives, registers, records or forwards * * * money * * * bet or wagered * * * by or for any other person" upon the result of a horse race has reference to the receipt registering, recording or forwarding, and not to the money or thing wagered. People ex rel. Collins v. McLaughlin, 23 N. Y. Crim. 92.

WHO ARE LIABLE.

A clerk who attends his employer at a race track and records in a book bets which his employer makes on the races held not guilty of a violation of the provisions of the Penal Law forbidding the keeping of establishments for betting or gaming. People ex rel. Sturgis v. Fallon, 152 N. Y. 1, 11 N. Y. Crim. 273.

All who participate are principals. People v. Trainor, 57 App. Div. 42, 15 N. Y. Crim. 333.

INFORMATION.

On information by the district attorney of New York County, upon information and belief, that in the city and county of New York on January 1, 1901, and thereafter continuously until December 1, 1901, one C did at said city, in premises described, use certain rooms and allow them to be used for the purpose of gambling is sufficient to invest the magistrate with jurisdicton to proceed with an investigation into the truth of the allegations, issue subpœna for witnesses and require them to answer, and to exclude the public from inquiry. People ex rel. Lewishon v. Wyatt, 17 N. Y. Crim. 166; Same v. O'Brien, 17 N. Y. Crim. 166.

INDICTMENT—GENERALLY.

Sufficiency of indictment for selling lottery policies. People v. Dunn, 90 N. Y. 104.

Every material fact which is an essential and necessary ingredient of the offense must be clearly stated, where no precise statutory form is prescribed. People v. Stedeker, 175 N. Y. 57, 17 N. Y. Crim. 326.

Where an indictment for gaming follows the language of the statute it is a general rule sufficient. People v. Corbalis, 17 N. Y. Crim. 469, 86 App. Div. 469.

It is well settled that if exceptions are stated in the enacting clause it would be necessary to negative them in order that the description of the crime may correspond with the statute, but if there be an exception in a subsequent clause or a subsequent statute, that is a matter of defense, and must be shown by the defendant. Jefferson v. People, 101 N. Y. 19, 3 N. Y. Crim. 572.

An exception incorporated in the statutory description of the crime must be negatived in the indictment, while a proviso need not be. Fleming v. People, 27 N. Y. 329.

SAME—CHARGING MORE THAN ONE CRIME.

An indictment which charges defendant with having gambled for money at a certain place on a certain day, and that on the same day at the same place he gambled for money or other property, to wit, liquors, does not charge the commission of more than one crime, and is good. People v. O'Malley, 52 App. Div. 46, 15 N. Y. Crim. 52.

SAME—DESCRIPTION OF GAME.

A statement of the name of the game, without any description thereof or of the manner of playing the same, held sufficient, where such game is in express terms forbidden by statute. People v. Corbalis, 86 App. Div. 531, 17 N. Y. Crim. 469.

SAME—JOINDER OF COUNTS.

Counts under a statute against gaming and counts for keeping and maintaining such a common gambling house as to constitute a nuisance at common law may be properly joined in the same indictment. People v. Emerson, 53 Hun, 437.

EVIDENCE.

As to what is admissible. See People v. Adams, 85 App. Div. 390, 17 N. Y. Crim. 443.

As to what is not admissible. See Conway v. State, 4 Ind. 94.

Evidence as to the nature of the game or device involved in the prosecution and describing it held admissible. People v. Emerson, 5 Supp. 374, 6 N. Y. Crim. 157.

Placards which are not shown to be similar in character to the placards which were alleged to have been on the walls of a pool room when defendant committed the crime charged, and as to which there is no explanatory proof given, held inadmissible. People v. Ebel, 98 App. Div. 270.

SAME—WEIGHT AND SUFFICIENCY.

The knowingly having in possesion papers used in playing policy. People v. Adams, 85 App. Div. 390, 17 N. Y. Crim. 443.

SAME—WITNESS—PRIVILEGE OF.

A witness who refuses to answer a question whether he had ever been

in the premises said to have been occupied as a gambling house is guilty of a misdemeanor under Penal Code, section 143, as the indemnity afforded him by section 342 of the Penal Code meets and overcomes the protection of the Constitution (Art. 1, Sec. 6) that no person shall be a witness against himself. People ex rel. Lewisohn v. Wyatt, 17 N. Y. Crim. 166.

## TRIAL.

Held no error to omit to give particular instructions which are not requested, especially if the instructions as given fairly present the facts and law in the case. King v. People, 83 N. Y. 587.

## SAME—PROOF AND VARIANCES.

The place in which and its character, where that is an essential element of the crime, as described in the indictment, must be supported by the evidence within a reasonable certainty. People v. Trainor, 57 App. Div. 422, 15 N. Y. Crim. 333.

An indictment which charges the commission of the offense on a specified date is sustained by proof of the offense committed on any day prior to the finding of the indictment, within the period of limitation. People v. Shannon, 87 App. Div. 32, 17 N. Y. Crim. 532.

## THE DEVICE OR APPARATUS.

Poker is a game of chance. Kennow v. King, 2 Mont. 437. .

So is a horse race bet on by a " Paris Mutual." Tollett v. Thomas, L. R. 6, Q. B. 514.

So is a raffle with dice. Long v. State, 22 Tex. App. 194.

An election is not a game. Schlosser v. Smith, 93 Ind. 83.

A pool room is a gaming room. People v. Weitoff, 51 Mich. 203.

Dealing in options is not gaming or betting. Shaw v. Clark, 49 Mich. 494.

A wager that an execution cannot be collected is not a game. Boughner v. Meyer, 5 Colo. 71.

Poker is not a game " like faro, keno," etc. Nuckolls v. Com., 32 Gratt 884.

Backgammon is not a " game played with dice." Wetmore v. State, 55 Ala. 198.

Playing cards for mere amusement is not gaming. Ansley v. State, 36 Ark. 67, 38 Am. Rep. 29.

So of "pigeon-hole" in sport. Wolz v. State, 33 Tex. 331.

Fighting cocks are not gaming apparatus. Coolidge v. Choate, 11 Metc. 79.

Gaming table is any table used for gaming. Toney v. State, 61 Ala. 1.

But not a common table on which dice are thrown for drinks or money. Whitney v. State, 10 Tex. Ct. App. 377.

Keeping a room where wagers are made as to the fluctuations of the price of stocks bought and sold in the New York Exchange as indicated by a stock quotation ticker, no violation of this section. People v. Todd, 51 Hun, 446, 6 N. Y. Crim. 203.

Where there are no controverted facts the constitutional question may be raised upon writ of habeas corpus without the aid of a writ of certiorari. People ex rel. Wilson v. Flynn, 72 App. Div. 16 N. Y. Crim. 491.

Where defendant, upon a plea of guilty to one of the counts in the indictment, is convicted and sentenced, he cannot, in the absence of a motion in arrest of judgment or of a direct appeal therefrom, raise the question in habeas corpus or certiorari proceedings when the count under which he was convicted states facts sufficient to charge him with a crime. People ex rel. Schneider v. Hayes, 108 App. Div. 619 N. Y. Crim. 511.

A statute authorizing the police to seize gambling tables and gaming devices used for gambling, and making it the duty of the president of the police to cause the same to be publicly destroyed, without notice to the owner or any semblance of a judicial investigation, is unconstitutional. Lowry v. Rainwater, 70 Mo. 152.

A device or apparatus for gambling is a device or apparatus designed for carrying on the actual gambling—for determining whether the player is to win or lose. People v. Engelman, 129 App. Div. 463, 23 N. Y. Crim. 130.

## SAME—EVIDENCE.

Proper to show by one familiar therewith what a "lottery policy" is. People v. Emerson, 6 N. Y. 5 Supp. 374, Crim. 57.

## KINDRED OFFENSES.

At common law, the keeping of a common gambling house was an indictable offense. Jenks v. Turpin, 13 Q. B. D. 505.

And same is expressly prohibited by statute. People v. Klock, 48 Hun, 275.

## PARTICULAR ENACTMENTS.

Book-making and pool-selling are prohibited by statute. Jerome Park Co. v. N. Y. Board of Police, 11 Abb. N. C. 342.

Laws of 1895, chapter 570, held not to exempt persons who make books at other places than the race courses from prosecution under Penal Code 351. People v. Stedecker, 75 App. Div. 449, 17 N. Y. Crim. 127; Reversed, 175 N. Y. 57, 17 N. Y. Crim. 326.

The Ives Pool Bill, laws of 1887, chapter 479, held void under the constitutional prohibition against lotteries, insofar as it purports to authorize pool-selling at a race course. Irving v. Britton, 8 Misc. 201.

Dealing in futures under certain conditions is gaming. People v. Wade. 59 N. Y. Supp. 846, 13 N. Y. Crim. 546.

## SAME—COMMON GAMBLERS.

Statutory provision regarding common gamblers construed. People v. O'Malley, 52 App. Div. 46, 15 N. Y. Crim. 52.

Same regarding one who sells lottery policies, construed. People v. Flynn, 37 Misc. 87, 16 N. Y. Crim. 278.

But such a transaction held not to be a violation of the general statute against gaming. People v. Todd, 51 Hun. 446.

The playing of policy is gaming. People v. Adams, 176 N. Y. 351, 19 N. Y. Crim. 425.

## SAME—INDICTMENT.

Charging defendant with owning and distributing sheets of " advance information " as described herein does not charge a crime. People v. Engleman, 129 App. Div. 463, 23 N. Y. Crim. 130.

## SAME—BOOK-MAKING.

The vice of book-making chiefly consists in soliciting and in the inducing the public to take chances in the carefully figured and planned scheme of the book-maker, and this, in order to be profitable to him, requires the writing out of the list of the odds laid on some paper or material so that they could be seen by those who were solicited to invest. People ex rel. Lichtenstein v. Langan, 24 N. Y. Crim. 105.

The originator of the scheme is not guilty of pool selling or book-making within section 351 of the Penol Code, 986 Penal Law. People ex rel. Lawrence v. Fallon, 11 N. Y. Crim. Rep. 279.

A person guilty of book-making and pool-selling is punishable under this section and his liability is not limited to a penalty recovered in a civil action as a stakeholder. People ex rel. Clifton v. De Bragga, 73 App. Div. 579, 17 N. Y. Crim. 12.

One who makes a bet with another upon the result of a game of golf about to be played between them and records or registers said bet on a card, does not violate this section which is confined to the recording of the bets of all comers as a practice of business. ` People ex rel. Sterling v. Sheriff, etc., 60 Misc. 326.

The keeping of premises not located upon a race track for recording and registering bets on horse races does not fall within the exception of this section. People v. Levoy, 72 App. Div. 55, 16 N. Y. Crim. 496.

## SAME—SAME—INDICTMENT.

An information charged the person arrested thereon with laying odds and publishing the same, but was not intended to, and did not charge that such laying odds and publishing was by any written or printed instrument, but was oral. Held that such information did not allege acts which constitute the crime of book-making within the meaning of section 351 of the Penal Code, which provides that any person who engages in book-making is guilty of a misdemeanor and prescribes the penalty therefor. People ex rel. Lichtenstein v. Langan, 24 N. Y. Crim. 105.

A commitment to await the action of the grand jury "upon a charge of violation of section 351 of the Penal Code " is so defective upon its face that the defendant must be discharged. People ex rel. Allen v. Hagan, 170 N. Y. 46, 16 N. Y. Crim. 309.

## SAME—HORSE RACING.

The fact that the owner of each horse who proposes to compete in the race is required to pay an entrance fee does not make the transaction a gambling transaction. People ex rel. Lawrence v. Fallon, 11 N. Y. Crim. Rep. 279.

This statute was aimed at a race in which the competitors put up the money and where one had the chance of winning from the other as in Gibbons v. Gouverneur, 1 Den. 170, and did not apply where the stake was put up by another. McAdam J., in Corrigan v. Coney Island Jockey Club, 27 Abb. N. C. 300.

This and·the next section were by the act commonly known as the Ives bill (L. 1887, chap. 479), made inapplicable to racing associates during stated periods, May 15th and October 15th, in each year. Corrigan v. Coney Island Jockey Club, 27 Abb. N. C. 300.

The act of 1887 (chap. 479), although not expressly declaring that pool selling at the times and places specified shall be legal, inferentially showed the legislative intent to have been to legalize such sales. Brennan v. Brighton Beach Assn., 56 Hun, 188, 9 N. Y. Crim. 220.

The amendment of 1895 to this section has no effect upon acts committed prior to its passage. People v. Cleary, 13 Misc. 546, 35 N. Y. Supp. 583.

Nor is said amendment so connected with or dependent upon chapter 570 of the laws of the same year authorizing certain organizations to conduct races for purses or prizes as to be invalid, even if (which is not decided) the latter act is obnoxious to the provision of the Constitution which prohibits the authorization of gambling. People ex rel. Weaver v. Van de Carr, 150 N. Y. 439.

## SAME—KEEPING A GAMBLING HOUSE.

The occupancy of premises not located upon the race track for recording or registering bets on horse races does not fall within the exception of section 351, Penal Code, 986 Penal Law. People v. Levy, 16 Crim. Rep. 496, 72 App. Div. 55.

An agreement by which complainant sent through defendant to a third party at the Sheepshead Bay race track, a sum of money to be invested by said third party on a race to. be that day run, considered by the court, and held to constitute a violation of Sec. 351 of the Penal Code, prohibiting keeping or occupying with books, etc., for the purpose of recording or registering bets or wagers. People ex rel. Ottolengui v. Barbour, 5 N. Y. Crim. 381.

An indictment for keeping a room or recording bets and selling pools on results of horse races and other contingent events is insufficient where it fails to allege that defendant kept and occupied a room with books, papers, apparatus or paraphernalia for the purpose of recording bets and selling pools, as the statute makes the presence of the books or apparatus an essential ingredient of the felony defined. People v. Stedeker, 175 N. Y. 57, 17 N. Y. Crim. 326.

Defendant kept a public saloon to which persons resorted for· the purpose of playing games, known as pool and·bagatelle. Sometimes these games were played upon the terms that the loser should pay for the use of the gaming apparatus, but at other times the players played for drinks.

Held, that such a house is a public nuisance, and the persons who resort there are gamesters within the definition of section 899 of the Code of Criminal Procedure. The keeper of such a house is a disorderly person. People v. Cutler, 1 N. Y. Crim. 178.

The occupying and keeping a place with paraphernalia for making, recording and registering bets and wagers constitute a crime punishable under section 351 of the Penal Code, and section 343, Penal Code, and section 17 of chapter 570 of the Laws of 1895, do not take the acts charged out of the operation of section 351 and so render them innocent. People v. Stedeker, 17 N. Y. Crim. 127.

Section 351 of the Penal Code is not in conflict with section 1 of the Fourteenth Amendment of the Constitution or with the 977th section of the Revised Statute of the United States, in that it establishes two different punishments for the same offense. People v. Stedeker, 17 N. Y. Crim. 127.

A count in an indictment under section 351, Penal Code, for keeping and occupying a room for recording bets and selling pools on horse races is defective where it fails to allege that defendants kept and occupied a room with books, papers, apparatus or paraphernalia for the purpose of recording bets or wagers. People v. Stedeker, 17 N. Y. Crim. 326.

SAME—SAME—INDICTMENT.

The indictment need not specify the particular house or building in which the defendants are charged with keeping and occupying a room for the purposes forbidden. It is sufficient that the indictment charged the facts constituting the offenses and the place where it was committed as within the jurisdiction of the court. People v. Stedeker, 17 N. Y. Crim. 326.

Such an indictment is fatally defective in failing to aver that the rooms kept and occupied by the defendants were not on a race course authorized by statute, since the keeping of an establishment for gambling constitutes a felony under section 351, " except when another penalty is provided by law," no other penalty therefor is prescribed by the Revised Statutes nor by section 343, that section embracing only cases not specifically provided for by section 351; but under the Racing Law, 1895, ch. 570, in the absence of an allegation that vouchers for bets or pools were ever delivered or intended to be delivered, or that defendants occupied and kept the room for that purpose, another penalty is prescribed by law which is both civil and exclusive, and, therefore, both the indictment and the proofs should negative the fact that the case comes within the exception. People v. Stedeker, 17 N. Y. Crim. 326.

SAME—SAME—COMMITMENT.

A commitment to answer, "upon a charge of violation of section 351 of the Penal Code," is void, as some of the fifteen acts therein referred to are or may be lawful. People ex rel. Allen v. Hagan, 16 N. Y. Crim. Rep. 309, 170 N. Y. 46.

SAME—SAME—DEFENSES—KEEPING HOUSE.

Defendant charged with keeping a room, etc., cannot shelter himself behind his wife as the owner of the business. People ex rel. Sturgis v. Fallon, 11 Crim, Rep. 273, 4 App. Div. 76.

SAME—SAME—EVIDENCE.

The refusal of the trial court to allow evidence as to the non-existence of a search warrant at the time of the removal of gambling apparatus from the office of defendant, held no error. People v. Adams, 17 N. Y. Crim. 558.

SAME—SAME—SAME—SUFFICIENCY THEREOF.

Where the only evidence to connect defendant with the gambling rooms in the rear of a building which belonged to another person, is that he occasionally waited on customers in the cigar store in front belonging to his son, and which connects with the rear rooms by a door, and that he said that the business was good, and that a sign on the sidewalk bore his name, the evidence is insufficient to warrant a conviction of keeping a gambling house. People v. Mitchell, 10 N. Y. Crim. 244.

SAME—PERMITTING USE OF PREMISES.

Sufficient if indictment alleges a violation substantially in the language of the statute. People v. Wyatt, 81 App. Div. 51.

SAME—KEEPING GAMBLING APPARATUS.

Keeping of gambling apparatus in a house, and permitting others to use them, indictable. Lyner's case, 5 City Hall records, 156.
A shuffle board kept in a grocery is within Penal Law 971. Cascadden's case, 2 City Hall records, 53.

SAME—POOL SELLING.

Where, under an indictment for pool selling, the evidence showed that

three minutes before a horse race was run in New Jersey, the defendant sold a ticket in New York on a horse to win the race, the ticket being unsigned and blank as to names, place and odds, the jury is entitled to infer that the investment could not have been actually made in New Jersey before the race came off, and that the whole transaction was a cover to evade the law. People v. Fisher, 10 N. Y. Crim. 118.

Not necessary in order to convict of the crime of pool selling that the entire contribution of various bettors were divided among the winners. People v. McCue, 17 N. Y. Crim. 534.

Pool selling at horse races was declared to be void by the Revised Statutes. Brennan & Brighton v. V. R. Assn., 56 Hun, 189, 30 St. Rep. 407.

Penal Law 986, makes either of three things criminal. (1) If the person occupies or keeps a place with the requisite purpose to record bets; (2) if the person in fact does record bets, or (3) if the owner or occupant of premises knowingly permits the same to be used for this purpose, such acts are made misdemeanors. People v. Kelly, 3 N. Y. Crim. Rep. 273.

Does not refer to transactions where the stake is put up by a stranger. Coney Island Jockey Club, 74 St. Rep. 144.

This remained a law until the enactment of the Penal Code. The Code was not intended to do and did not legalize such transaction unless permitted by such laws. Brennan & Brighton V. R. Assn., 56 Hun, 189, 30 St. Rep. 407.

The effect of chapter 479 of 1887, is that sales of pools may be made between May 15th and October 15th, but they must be confined to the tracks where the races take place and on the same day as the races for which the sale is made. Brennan & Brighton v. V. R. Assn., 56 Hun, 189, 30 St. Rep. 407. See People ex rel. Ottenlengui v. Barbour, 5 N. Y. Crim. Rep. 384.

The case of Jerome Park Company v. Board of Police (11 Abb. N. C. 342) arose under the law as it existed in 1882 before the enactment of chapter 479 of 1887.

An agreement by which one party sent through another to a third party money to be bet on the race track, on the horse to be run that day, was held to be a violation of this section. People ex rel. Ottenlengui v. Barbour, 5 N. Y. Crim. Rep. 381.

Where a clerk walks up and down, following his employer, who makes the bets and records them as they are made, he does not occupy any place upon the grounds for the purpose of recording bets or wagers, within the

meaning of section 351, Penal Code. People ex rel. Sturgis v. Fallon, 11 Crim. Rep. 273, 4 App. Div. 76.

Two counts, one for occupying or keeping a room to be used for gambling, and the other allowing a room to be used for gambling purposes, may be properly joined in one commitment. People ex rel. Sturgis v. Fallon, 11 Crim. Rep. 273, 4 App. Div. 76.

### SAME—SAME—INDICTMENT.

Indictment which charges that defendants did "engage, aid, assist and abet in pool selling and selling pools," held not void for duplicity. People v. Corbais, 17 N. Y. Crim. 469.

Sufficient to state that defendants on a given day feloniously outside the race course authorized by law did engage in pool selling and selling pools upon the result of a trial and contest of speed and power of endurance of horses. People v. Corbalis, 17 N. Y. Crim. 469.

### SAME—SAME—EVIDENCE.

The fact that horse races were actually taking place at the date and place named is sufficiently proved by representations to that effect in the printed score cards furnished the patrons in the pool room. People v. McCue, 17 N. Y. Crim. 534.

### SAME—SAME—TRIAL.

Where the evidence shows that pools were sold on premises on a day certain, and that defendant was present on the preceding and two succeeding days, with failure of proof as to sales on those days, held reversible error for the court to charge the jury that they might determine whether defendant aided, abetted and assisted in the sales. People v. Shannon, 17 N. Y. Crim. 532.

### SAME—STOCK SPECULATION.

An optional contract for the purchase or sale of stock, to be settled, not only by the actual delivery of the stock, but upon the basis determined by the fluctuation of its market value, is not gambling within the provisions of the Penal Code (chapter 9). People v. Todd, 6 N. Y. Crim. 203.

And the proprietor of a place where the business of making such transactions is carried on, does not keep a room, etc., to be used for gambling within the provisions of section 343 of the Penal Code. People v. Todd, 6 N. Y. Crim. 203.