## ANDRES *against* WELLS.

An action for a *libel* lies against the *proprietor* of a gazette edited by another, though the publication was made without the knowledge of such proprietor.

But where a printing press and newspaper establishment were assigned to a person merely as security for a debt, and the press remained in the sole possession and management of the assignor, this was held not to be such an ownership in the person holding the security or lien, as would render him liable to an action, as proprietor.

THIS was an action on the case for a libel.

The cause was tried before Mr. Justice *Van Ness*, at the *Rensselaer* circuit, in *June*, 1810.

The libel was proved to have been published in the *Troy Gazette*, the 3d *October*, 1809; the paper was printed by *John C. Wright*, who was the editor.

It was proved that the defendant, after the publication of the libel in question, admitted that he was one of the proprietors. *Wright* and two others were owners of the press and establishment, and assigned the same to the defendant and *Thomas Hillhouse*, as security for their endorsement on certain notes; but they did not receive the profits of the paper, nor had they any agency in its publication; nor were they consulted about the articles inserted, the same being left to the exclusive management of *Wright*. By the agreement between *Wright* and the defendant and *Hillhouse*, if the notes were not paid, the press and establishment were to be the absolute property of the defendant and *Hillhouse*. *Wright*, with their assent, afterwards sold the press, &c. to one *Lewis*, and discharged the defendant and *Hillhouse* from their responsibility on the notes. During the time the

defendant and *Hillhouse* held the assignment as security, they did not take possession of the press, nor advance any money to pay the workmen; but the same was conducted solely at the expense of *Wright* and the original owners.

NEW-YORK,
Nov. 1810.

ANDRES
v.
WELLS.

The judge told the jury, that if they believed the witnesses, as to the assignment and the nature of the interest of the defendant, he would be entitled to a verdict; on which the plaintiff submitted to a nonsuit, with liberty to move the court to set it aside, and grant a new trial.

*J. Russel*, for the plaintiff. 1. In the case of *Rex* v. *Walter*,[*] Lord *Kenyon* held it to be clear and settled law, that the proprietor of a newspaper was answerable criminally, as well as civilly, for the acts of his servants or agents, for any misconduct in the conducting of a *newspaper;* and he stated this to be the opinion of Lord *Hale;* Justice *Powell* and Justice *Foster*. In *Rex* v. *Almon*,[†] Lord *Mansfield* stated the law to be, that buying a pamphlet in the shop of a bookseller and publisher, of a person acting in the shop, was a *prima facie* evidence of a publication by the master himself.[‡] There can be no doubt as to the law on this point.

[*] 6 *Esp. N. P. Cas.* 21.

[†] 5 *Burr.* 2686.

[‡] See, also, *Rex* v. *Nutt*, *Bull. N. P.* 6. *Harris's* case, 2 *St. Tr.* 1037.

2. The defendant admitted he was one of the proprietors, and though the press and establishment were assigned to him and *Hillhouse* as security, it makes no difference. His own admission and acts are sufficient to make him answerable. He had, at least, a qualified property, which enabled him to control the printer, who is to be regarded as his agent or servant. Evidence of a person's being a servant *de facto*, is enough.[§]

[§] 2 *Term Rep.* 168.

*Foot* and *Van Vechten*, contra. 1. The defendant cannot be liable to this action, unless he had some knowledge of, or was privy to the publication. To render a person liable for a libel, he must be the contriver, procurer, or publisher of it, knowing it to be a libel.[¶] The case of the *King* v. *Almon*, confirms this doctrine. Ownership is mere *prima*

[¶] *Lambe's* case, 9 *Co.* 59. *Adjudged Cases*, 613. *Fitzgibbon*, 47.

*facie* evidence of liability, and which may be contradicted. If the publication was made without the knowledge of the defendant, he ought not to be responsible for the act of another, of which he was totally ignorant. No knowledge of the publication is brought home to the defendant; nor is there any evidence of any act or concurrence on his part, as to the publication. Malice cannot be presumed where there is no knowledge; and there ought to be some evidence of a criminal intent.* The case of *Rex* v. *Walters* is not the law in regard to libels, as laid down in *Lambe's* case, and the case of the *King* v. *Almon.*

* 4 *Term Rep.*
126.

SPENCER, J. delivered the opinion of the court. Two questions arise in this case, for our consideration.

1. Is a proprietor of a newspaper, in which a libel is published, answerable by action, though he has no concern in conducting it, and the publication was without his privity?

2. Is the defendant to be considered, in point of fact, such proprietor?

In the case of *Rex* v. *Walter*, (3 *Esp. N. P. Cas.* 21.) Lord *Kenyon* was clearly of opinion that the proprietor of a newspaper was answerable criminally, as well as civilly, for the acts of his servants or agents, for misconduct in conducting a newspaper; and he said it was not his opinion only, but that of Lord *Hale*, Justice *Powell*, and Justice *Foster;* that it was the old received law for above a century, and was not to be broken in upon by any new doctrine upon libels; and, under this opinion, the defendant was found guilty, though it was shown he had nothing to do with conducting the paper, resided entirely in the country, and that it was conducted by his son, without any interference on his part.

The defendant's counsel contend, that the law is otherwise, and they rely on *Lambe's* case, (9 *Co.* 59.) and the *King* v. *Almon*, (5 *Burr.* 2686.) In *Lambe's* case it was resolved, among other things, that to convict a person of a libel, he ought to be the contriver, procurer, or publisher of it, knowing it to be a libel. In the *King* v. *Almon*, the

selling a libel by a servant, in the defendant's shop, was held *prima facie* evidence of a sale by the master's orders; but it was admitted by the court, that this presumption might be repelled. There is, in fact, no contradiction between these cases. The law, as laid down in *Lambe's* case, is general. The court were not called on to say how far the master is responsible for the act of his servant; and in *Almon's* case, the admission that the defendant might repel the presumption, went on the principle that the master might show that the act of his servant was not attributable to him, in so far as the servant exceeded his authority. But where a man is the owner of a paper, and gives over the conducting of it to another, he thereby constitutes him his general agent; and is answerable for all his acts done in the execution of that trust, whether within or beyond the intention of the principal. The case of the *King* v. *Topham*, (4 *Term Rep.* 126.) in which the court was unanimous, contains the same doctrine as the case of the *King* v. *Walter;* that the proprietor of a paper is answerable for the publication of a libel. It would be too much to say, that any man might with impunity own and sustain a public newspaper, without any responsibility for the libels with which it might abound. The principle laid down by Lord *Kenyon* is salutary and essential.

On the second point there is some seeming contrariety; the defendant admitted that he was one of the owners and proprietors of the paper in which the libel was published, and that he and another employed the workmen. But it appeared from the testimony of two witnesses called by the defendant, that the press and other things were assigned by the former proprietors to the defendant and *Hillhouse*, as security for a debt; that they never took possession of the press, nor furnished any materials, nor paid the workmen, nor received any of the profits; that it was not sold by them, but by others, when the defendant was released from his responsibility, and ceased to have any interest in the press. The judge declared, that if the jury believed the

NEW-YORK,
Nov. 1810.

facts there proved, he should direct them to find for the defendant; and the plaintiff submitted to a nonsuit. If the facts proved by the defendants are conceded to be true, (and the submitting to a nonsuit is such a concession,) the judge was correct in the opinion he gave. The defendants are not to be considered absolute proprietors, but rather as mortgagees; the mortgagor being left in possession, such a *lien* is not that kind of ownership which is requisite to render a person liable in this action as a proprietor.

Judgment of nonsuit.