(85 App. Div. 390.)

### PEOPLE v. ADAMS.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1 LOTTERIES—POSSESSION OF PAPERS—INDICTMENT—SUFFICIENCY.

Under Pen. Code, § 344a (Laws 1901, p. 431), making it a crime for any person to have in his possession, knowingly, any paper representing any chance, or interest in numbers sold, in what is commonly called "policy," or any article of any kind commonly used in carrying on the game commonly called "policy," an indictment in the language of the statute, which describes the writing found in defendant's possession, is sufficient as against an objection that it did not allege knowledge by defendant of the character of the papers the possession of which was prohibited, nor that defendant had used or intended to use them for an unlawful purpose.

2. SAME—CONVICTION—SUFFICIENCY OF EVIDENCE.

In a prosecution for knowingly having in possession papers used in playing policy, in violation of Pen. Code, § 344a, evidence that certain sheets which were records of numbers on which bets had been made in playing the game commonly called "policy" were found in a trunk in a private office exclusively occupied by defendant; that the trunk was locked, and had been placed in the office, open, under defendant's direction; and that the sheets were with other papers belonging to defendant—is sufficient to sustain a conviction.

3. SAME—PAPERS RELATING TO GAME—COMPETENCY.

In a prosecution for knowingly having in possession papers used in playing policy, in violation of Pen. Code, § 344a. papers found in defendant's office, relating to the game of policy, are competent evidence as to his possession of them.

4. SAME—PRODUCTION OF PRIVATE PAPERS—PRIVILEGE OF WITNESS.

In a prosecution for violating Pen. Code, § 344a, prohibiting the possession knowingly of papers used in playing policy, the production by police officers of private papers of defendant's, seized with other papers relating to the game, with testimony as to defendant's possession of all the papers, is not incompetent, under Const. art. 1, § 6, providing that no person shall be compelled in any criminal case to be a witness

---

¶ 1. See Gaming, vol. 24, Cent. Dig. § 226.

against himself, on the ground that the papers were unlawfully seized in violation of his constitutional right to be secure in his effects, and he was compelled thereby to be a witness against himself.

5. SAME—ILLEGAL SEIZURE OF PRIVATE PAPERS.

The illegal seizure of papers constitutes no ground for excluding them as evidence in the trial of an indictment of the person in whose possession they were found.

Appeal from Court of General Sessions, New York County.

Albert J. Adams was convicted of violating Pen. Code, § 344a (Laws 1901, p. 431), and he appeals. Affirmed.

Argued before PATTERSON, P. J., and HATCH, INGRAHAM, and LAUGHLIN, JJ.

L. Laflin Kellogg, for appellant.
Howard S. Gans, for the People.

INGRAHAM, J. The defendant was indicted under section 344a of the Penal Code (Laws 1901, p. 431), and there are two questions presented upon this appeal which we think require discussion. The constitutionality of this section of the Penal Code has been sustained by this court in People ex rel. Wilson v. Flynn, 72 App. Div. 67, 76 N. Y. Supp. 293, and that question is not open to further debate here.

The first question is as to the sufficiency of the indictment, and the objection taken is that it is insufficient because it neither alleged knowledge by the defendant of the character of the papers the possession of which was prohibited by the statute, nor that the defendant either had used or intended to use them for an unlawful purpose. Section 344a of the Penal Code provides that:

"A person * * * who shall have in his possession, knowingly, any writing, paper or document, representing or being a record of any chance, share or interest in numbers sold, drawn or to be drawn, or in what is commonly called 'policy,' or in the nature of a bet, wager or insurance, upon the drawing or drawn numbers of any public or private lottery; or any paper, print, writing, numbers, device, policy slip, or article of any kind such as is commonly used in carrying on, promoting or playing the game commonly called 'policy'; * * * is a common gambler, and punishable by imprisonment."

The act which this section makes a crime is the possession, knowingly, of any writing, paper, or document representing or being a record of any chance, share, or interest in numbers sold, drawn, or to be drawn, or in what is commonly called "policy," or any paper, print, writing, numbers, device, policy slip, or article of any kind, such as is commonly used in carrying on, promoting, or playing the game commonly called "policy." There are two elements necessary to constitute this crime. The first is possession by the defendant. The second is a knowledge of the fact that the writing is in his possession and of the character thereof, and, if the indictment sufficiently and clearly charges the defendant with these two essential facts—the possession of the papers, documents, or articles specified in the statute, and knowledge by the defendant of such possession, with knowledge of its character—it is sufficient.

By section 275 of the Criminal Code, the indictment must contain "a plain and concise statement of the act constituting the crime,

without unnecessary repetition"; and section 284 of the Code of
Criminal Procedure provides that the indictment is sufficient, if it
can be understood therefrom "that the act or omission, charged as
the crime, is plainly and concisely set forth," and that "the act or
omission charged as the crime, is stated with such a degree of cer-
tainty as to enable the court to pronounce judgment, upon a con-
viction, according to the right of the case." Section 285 provides
that "no indictment is insufficient, nor can the trial, judgment, or
other proceedings thereon be affected, by reason of an imperfection
in matter of form, which does not tend to the prejudice of the sub-
stantial rights of the defendant, upon the merits." Section 323 of
the Code of Criminal Procedure provides that the defendant may
demur to the indictment when it appears on the face thereof that
the indictment does not conform substantially to the requirements
of section 275, that is, where the indictment does not contain a plain
and concise statement of the act constituting the crime, without
unnecessary repetition, and when the facts so stated do not constitute
a crime. Section 331 provides that "the objections mentioned in
section three hundred and twenty-three can only be taken by de-
murrer; except that the objection to the jurisdiction of the court
over the subject of the indictment, or that the facts stated do not con-
stitute a crime, may be taken at the trial, under the plea of not guilty,
and in arrest of judgment."

The only objection to this indictment that can be considered on
appeal from a judgment is that the facts stated do not constitute a
crime, and it follows that, if the indictment charges the defendant
with "having in his possession, knowingly, any writing, paper or docu-
ment, representing or being a record of any chance, share or interest
in numbers sold, drawn or to be drawn, or in what is commonly
called 'policy' * * * or any paper, print, writing, numbers, de-
vice or policy slip, or articles of any kind such as is commonly used in
carrying on, promoting or playing the game commonly called 'pol-
icy,'" it states the facts which constitute the crime, and is sufficient
after a plea of not guilty. It is settled, under the Code of Criminal
Procedure, that it is generally sufficient to state an offense in the
language of the statute defining the crime. People v. West, 106
N. Y. 293, 12 N. E. 610, 60 Am. Rep. 452; People v. Weldon, 111
N. Y. 569, 19 N. E. 279; People v. Williams, 149 N. Y. 1, 43 N. E.
407. The indictment in this case is in the words of the statute.
There are two counts. The first count charges that the defendant
"did knowingly have in his possession a certain writing, paper and
document representing and being a record of a chance, share and
interest in numbers sold in what is commonly called policy, which
said writing, paper and document is as follows, that is to say"; and
then follows a description of the document and writing alleged to
have been found in the defendant's possession. The second count
charges that the defendant "did knowingly have in his possession
a paper, print, writing, numbers, device, policy slip and articles of a
kind such as is commonly used in carrying on, promoting and playing
the game commonly called policy, which said paper, print, writing
numbers, device, policy slip and articles aforesaid is as follows"; then

follows a description of the document and writings found in the pos-
session of the defendant. This plainly charged the defendant with the
crime specified in section 344a of the Penal Code, and was a plain and
concise statement of the act constituting the crime.

The case of People ex rel. Wilson v. Flynn, supra, is not at all op-
posed to this view. The court was there considering the question
of the constitutionality of section 344b of the Penal Code, and, as
that section was to be construed in connection with section 344a,
the section was considered only in relation to the constitutionality
of section 344b. We held that the presumption provided for in sec-
tion 344b could only be applied where the document or articles are
found under such circumstances and conditions as indicate that they
may have been used in violation of the prior section, and, in order
that the people may avail themselves of the provisions of section 344b,
it must be made to appear that the articles were in use in connection
with a place used for doing the prohibited acts, or that a fair infer-
ence arose, from the circumstances surrounding the possession, that
they were or might have been unlawfully used; that, to justify the
presumption specified in section 344b, the people must show a rela-
tion as to the principal fact, viz., the existence of a condition from
which it may be fairly inferred that the articles may have been used
in violation of the provisions of the section defining the offense.
The discussion there had no relation to the sufficiency of an indict-
ment under section 344a, and nothing that was said can be construed
as applying to an indictment or proof necessary to convict under
that section.

The indictment being sufficient, we think the evidence justified
a conviction of the defendant of the crime charged in section 344a
of the Penal Code. There was found in a trunk, in a private office
exclusively occupied by the defendant, certain sheets which were rec-
ords of numbers upon which bets had been made in playing the game
commonly called "policy." This game of policy is described by a wit-
ness who had been connected with the game, and was familiar with the
materials, papers, and writings that are used in the promotion of
the game. He testified that there are "policy manifold books."
The method of this form of gambling was described as follows:
When an individual makes up his mind to play policy he goes into a
place for that purpose, and goes to the man in charge of the place,
and says he wants to play 9–19–29, which is known as a "dead gig";
he puts 10 cents on it, or he may put 2 cents, or whatever he sees
fit. The man takes his money, and formerly he used to give him
what they called a "lottery policy," which is a record. In the case
I illustrated it was 9–19–29, and 10 cents alongside the gig mark,
which would serve to identify him in the afternoon, to find the result
of his play, and the writer would record that bet on a similar sheet
to those. He would take a stylus, or lead pencil—whatever he would
see fit to use—and mark in one of those columns, 9–19–29, gig
mark—10 cents, and he would have a carbon paper over two similar
sheets, and make two copies and an original; that the player got
a little slip of paper with the numbers on it, and a record of his bet,
so as to identify him on this return; that "at the times the books

closed, which in the morning was 12:30, these books were sent to headquarters, and at 2:30 the result of the drawing would be sent to these shops by means of what they called a 'policy slip'; in some cases, over the 'phone, and others by messenger; and the man who played in the morning would enter and inquire for the result, and he would then be handed a policy slip, which is a slip generally stamped with a rubber stamp, having two columns, with the morning drawing. He would then consult each one of those columns to find whether his gig had come out. If it had, he was a winner, and would receive $10, and if it had not he would get nothing. * * * These things which are now being shown the jury are the kinds of sheets made up by the person who sold the policy, and which I have seen made; we found those all over the city. I have actually seen them in process of making."

There was, therefore, evidence that these manifold sheets were the sheets used in playing policy as thus described by the witness, and if they were found in the possession of the defendant, and he had knowledge of the fact that they were there, he was guilty of the crime specified in section 344a of the Penal Code.

We also think it quite clear that the evidence was sufficient to sustain a finding that these manifold sheets were in the defendant's possession. They were found in a trunk in his private office, which the defendant had directed should be placed in this office, in which there was also a desk and tin boxes. In the desk and tin boxes were found papers that manifestly belonged to the defendant, relating to his business, some of which were in his handwriting or had been signed by him. The trunk in which these manifold sheets were found was locked. It had been placed in his office open and empty by his direction, and these sheets were found in the trunk, with other papers which clearly belonged to him. We think the jury were entirely justified in finding that these papers were in the "possession, knowingly," of the defendant.

The remaining question is as to the competency as evidence of the papers found in the desk, tin boxes, and trunk in the defendant's office. This office of the defendant was in a back room in the offices of a firm of real estate brokers and agents in the city of New York. It had been occupied by the defendant for several weeks as his private office, and had his name upon the door. Police officers, under what is stated in the evidence to have been a search warrant—although this search warrant was not produced—took possession of the defendant's office. Shortly after they were in possession the defendant came in, and when he was informed of the object of the presence of the police officers he warned them not to touch anything in the office, as nothing there belonged to him. He was, however, arrested, and the officers proceeded to examine the trunk, the three tin boxes, and the desk. Having discovered in the trunk policy sheets, they took from the desk all papers that were there, and, with the trunk and tin boxes, these were conveyed to the district attorney's office. The officers testified that they were acting under a search warrant which was exhibited to the defendant. When the various papers that were found in the desk, tin boxes, and trunk were

offered in evidence, the defendant objected to their admission, upon the ground, among others, that "it appears by the testimony that the exhibits sought to be introduced in evidence were the result of a seizure of the defendant's personal papers under a search warrant, and I take the ground that the introduction of the same in evidence against his objection is compelling him to be a witness against himself, in violation of the Constitution of the United States and the state of New York, and I protest, on his behalf, against their introduction, and say that it is without his consent that they are now offered." This objection was overruled, to which the defendant excepted.

The papers thus found in the defendant's office, either in the trunk or tin boxes, that had relation to the game of policy, were competent evidence as to the main fact upon which the indictment was founded, i. e., the possession by the defendant of these documents and papers. The other papers found in the defendant's office, in connection with these prohibited documents, with proof that they related to the defendant's private business or property, were competent to prove that the defendant was in possession of the policy papers, unless the fact that they were illegally taken from his possession makes them incompetent evidence against him. We will assume that the seizure by the police officers of all the defendant's private papers was unlawful, and that officers thus seizing the papers were liable for a trespass or larceny. The question, then, is whether papers thus procured are incompetent evidence against a defendant charged with the commission of a crime, because possession of them was illegally obtained.

In support of this objection the learned counsel for the defendant relies upon the opinion of the Supreme Court of the United States in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. That case held that an act of Congress authorizing a court of the United States, in revenue cases, on motion of the government's attorney, to grant an order requiring the defendant charged with a crime to produce in court his private books, invoices, or papers, was a violation of the fifth amendment of the federal Constitution. This amendment relates solely to proceedings in the courts of the United States, and, while there are undoubtedly some expressions in Judge Bradley's opinion which question the admissibility in evidence of private papers illegally seized as against a person accused of crime, the question decided was as to the provision of an act of Congress which justified the court in granting an order requiring the person accused of a crime to produce in court his private books and papers for examination. The learned counsel for the defendant insists that the admission in evidence of the private papers of the defendant, thus unlawfully seized by the police officers, was a violation of the defendant's constitutional right to be secure in his person, papers, and effects against unreasonable searches and seizures, and that he was compelled thereby to be a witness against himself. The provision of the Constitution of this state which is alleged to be violated is section 6 of article 1, which provides that no person "shall be compelled in any criminal case to be a witness against himself"; and the question is whether, by the admission in evidence of these papers and documents, the property of the defendant, unlawfully seized by

the police officers, the defendant was compelled to be a witness against himself. The defendant was not called as a witness. He was called upon or required to produce no testimony. Certain documents and papers found in his possession were offered in evidence, as speaking for themselves, as to a fact to be proved upon his trial for a crime. It was not the contents of the papers that were material, except so far as they showed that they were papers which related to the defendant's affairs, and were such as were ordinarily found in the possession of an individual. Here certain papers, the possession of which made the defendant guilty of the crime, were found with other papers which showed them to be in the possession of the defendant. All of the papers together thus found, under circumstances which indicated that they were in the possession of the defendant, were introduced in evidence. This was not calling the defendant as a witness, or compelling him to testify against himself. It was a fact which was proven by the evidence of a police officer, who testified as to the possession of all these papers. Under the search warrant, the officers had the right to search the premises of the defendant, to discover, if possible, the possession of the papers for which they were authorized to search. If they, in the process of that search, had discovered these other papers that were seized and presented to the court, and had testified to the papers that they found in the office of the defendant, certainly that evidence would have been competent to show that the policy papers were found in connection with other papers, clearly the property of the defendant, which tended to show that the defendant had possession of the policy papers, with knowledge. That being so, the fact that the police officers took the papers themselves and offered them in evidence, although, when they took such possession, they exceeded their legal authority under the search warrant, would not have the effect of making the fact of the possession of the papers, the property of and in the handwriting of the defendant, incompetent evidence. The evidence against the defendant was the evidence of the police officers who found these papers, documents, and books in a position which indicated that they were in the possession of the defendant, and which tended to show that the policy papers, the possession of which was a crime, were also in his possession. It was the possession by the defendant of the papers which was the fact testified to, and that testimony was competent, not from the defendant, but from the police officers, who testified as to the location of the papers which were produced and introduced in evidence. Assuming, therefore, the correctness of the opinion of Judge Bradley, I do not think that the evidence of the possession of these papers by the defendant, and their production upon the trial, was a violation of the privilege secured to the defendant by the Constitution.

But, irrespective of that, we do not think that this privilege of the defendant was violated by the introduction of papers taken from his possession, however taken. While this question does not appear to have been directly presented in this state in relation to books and papers, it has been uniformly held in other states, and in text-books, that the fact that the possession of papers or articles have been ille-

gally taken or seized constitutes no ground for excluding the evidence thus obtained upon the trial, under an indictment, of a person in whose possession they were found. In Greenleaf on Evidence (volume 1, § 254a) this is expressly stated to be the rule, and this rule has been followed in other states. Gindrat v. People, 138 Ill. 103, 27 N. E. 1085; Commonwealth v. Tibbetts, 157 Mass. 519, 32 N. E. 910; State v. Van Tassel, 103 Iowa, 6, 72 N. W. 497; Chastang v. State, 83 Ala. 29, 3 South. 304; State v. Flynn, 36 N. H. 64; State v. Atkinson, 40 S. C. 363, 18 S. E. 1021, 42 Am. St. Rep. 877; Williams v. State, 100 Ga. 511, 28 S. E. 624, 39 L. R. A. 269; State v. Kaub, 15 Mo. App. 433. In the case of Ruloff v. People, 45 N. Y. 213, the defendant was convicted upon the evidence procured by a detective, who visited his room where he lived, and there found certain burglary tools, papers, and articles in a desk, which tended to show that the defendant occupied and had control of that room. And in Peo. v. Gardner, 144 N. Y. 119, 38 N. E. 1003, 28 L. R. A. 699, 43 Am. St. Rep. 741, and Peo. v. Van Wormer, 175 N. Y. 188, 67 N. E. 299, this objection is authoritatively answered.

Without further discussion, we think it clear that the introduction of these papers and documents was not a violation of any right assured to the defendant either by the Constitution or the law, and the admission of the papers did not constitute legal error.

Our attention has also been called to other rulings on evidence, and to objections to the charge of the court. It is sufficient to say that we have examined these rulings and find no error. The charge of the court to the jury was very full, and fairly stated the questions that they had to decide, throwing around the defendant all the safeguards to which he was entitled. All of the requests made by the defendant were charged, and there is but one exception to the charge as made, and that is clearly without merit. Twice the jury returned for further directions, and both times the instruction given was satisfactory to the defendant. No exception was taken, and the court instructed the jury in accordance with the requests of the defendant's counsel. The defendant had a fair trial. He was defended by experienced and able counsel. The jury, upon competent and sufficient evidence, found him guilty, and there is nothing in the record that would justify the court in reversing the conviction.

It follows that the judgment appealed from should be affirmed. All concur.