# GENERAL SESSIONS---NEW YORK COUNTY, March, 1915.

## THE PEOPLE v. MAX EASTMAN et al.

(89 Misc. 59

(1.) MALICIOUS LIBEL—PICTURE—PENAL LAW, § 1340—INDICTMENT.

An indictment under section 1340 of the Penal Law, which charges defendant with the publication of a malicious libel, consisting of a picture, a copy of which is set out in the indictment, is sufficient, it being for the jury to say whether or not the picture is a libel within the statutory definition.

(2.) SAME—QUESTION FOR JURY.

An allegation that the man shown in the picture is a representation and figure of N puts in issue whether or not the picture is a portrayal and likeness of N, and that means a recognizable likeness of N, and that is a question for the jury.

(3.) SAME.

The fact that on the same page with the picture and stated to be explanatory of it is printed an article in which no mention was made of N by name is no defense, as whether the picture explained or unexplained is or is not a libel of N is still a question for the jury.

(4.) SAME—PENAL LAW, SEC. 1343.

Section 1343 of the Penal Law, which provides " To sustain a charge of publishing a libel, it is not necessary that the matter complained of should have been seen by another. It is enough that the defendant knowingly displayed it, or parted with its immediate custody, under circumstances which exposed it to be seen or understood by another person than himself," is a sufficient answer to a contention that the indictment should allege that the piture was shown to some one who knew N.

(5.) SAME—PENAL LAW, SEC. 1340.

An indictment for libel, a misdemeanor under section 1341 of the Penal Law, which charges in the words of section 1340 of said law that the defendant " did unlawfully and wickedly print and publish

\* \* \* a certain false, scandalous, malicious and defamatory libel," sufficiently charges criminal intent.

(6.) SAME—DUPLICITY.

An indictment charging that defendant did publish a certain malicious libel " by then and there printing and publishing the same," in a certain magazine " then and there edited, printed and published by " defendants is not bad for duplicity as charging the commission of the crime in more than one form in the same count; the allegation that defendants edited the magazine being merely a statement of the evidence whereby their responsibility for the publication by the means and in the manner charged might be proved under section 1344 of the Penal Law, and the allegation that the magazine was edited by defendants does not add a different manner or means whereby it is charged that the libel was committed.

(7.) SAME—CODE CRIM. PRO., §§ 275, 276.

The indictment considered upon a demurrer thereto and held to meet all the requirements of sections 275 and 276 of the Code of Criminal Procedure.

DEMURRER to indictment.

*Charles A. Perkins, District Attorney,* for people.

*Gilbert E. Roe,* for defendants.

WADHAMS, J.:

The defendant Max Eastman has demurred to the indictment. The indictment alleges: " The Grand Jury of the County of New York, by this indictment, accuse Max Eastman and Arthur Young of the crime of publishing a libel, committed as follows: ". The indictment then recites that on the 26th of June, 1913, the Associated Press was a membership corporation, having its principal office in the borough of Manhattan, city of New York, and formed for the purpose, and engaged in the business, of gathering throughout the United States for the use of its members information of such events as constitute domestic news, and of supplying such information to its mem-

bers for publication by them in newspapers owned, managed or controlled by them, to the aggregate number of 800 and upward, circulated throughout the United States to the aggregate number of more than 15,000,000 copies daily; that one Frank B. Noyes was on said day president of said corporation engaged in supervising, directing and controlling the business thereof. The indictment then alleges: "And the said Max Eastman and Arthur Young, both late of the borough and county aforesaid, on the day and in the year aforesaid, at the borough and county aforesaid, well knowing the premises, did unlawfully and wickedly print and publish and cause and procure to be printed and published a certain false, scandalous, malicious and defamatory libel of and concerning the said Frank B. Noyes by then and there printing and publishing the same and causing the same to be printed and published in a certain magazine and periodical called ' The Masses " then and there edited, printed and published by them, the said Max Eastman and Arthur Young, and there having a circulation and being circulated, which said libel then and there consisted of a certain picture entitled ' Poisoned at The Source.' " Then follows a copy of a pen and ink picture representing the figure of a man labeled " Associated Press " pouring from a bottle labeled " Lies " into a reservoir of water labeled " The News." By his side on the rampart of the reservoir are two other bottles, one overturned on its side, labeled " poison," and on the darkened surface of the water within the reservoir are the words " Hatred of Labor Organization," " Suppressed Facts," " Slander," " Prejudice." Beyond the reservoir on either side are the buildings of a city, and in the background on the top of a distant hill against the horizon are four telegraph or telephone poles. The indictment then alleges: " the representation and figure of a man in which said picture was then and there a representation and figure of the said Frank B. Noyes " and that adjoining the picture and printed on the same page was

an article headed, "The Worst Monopoly," in which the Associated Press is several times mentioned, but which does not mention Noyes. The indictment, after alleging the innuendo of the picture and article, concludes: "and by then and there delivering and causing to be delivered copies of the said magazine so containing such picture and writing and copies of the said picture and writing to a large number of persons, and, among others, to one Jackson S. Elliott, against the form of the statute," etc.

I will consider each of the grounds upon which the defendant demurs.

(1) The defendant contends that the facts stated in the indictment do not constitute a crime, and urges two objections: *first*, that there is no allegation of a publication which exposes Noyes to hatred, contempt, ridicule or obloquy, and, *second*, that there is no allegation of malice or criminal intent on the part of the defendant.

The defendant argues that the indictment does not allege either in the language of the statute or in any equivalent language that the libel exposed Noyes to hatred, contempt, ridicule or obloquy or any fact upon which such inference may be drawn, in that it fails to state that the picture was a recognizable likeness of Noyes—that it resembles him in its features, that the explanatory article does not so explain the picture nor refer to Noyes, and there is no allegation that the picture was published to or seen by any one who knew Noyes or understood the picture to be a representation of him.

By section 1340 of the Penal Law libel is defined to be: "A malicious publication, by writing, printing, picture, effigy, sign or otherwise than by mere speech, which exposes any living person, or the memory of any person deceased, to hatred, contempt, ridicule or obloquy, or which causes, or tends to cause any person to be shunned or avoided, or which has a tendency to injure any person, corporation or assocation of persons, in his or their business or occupation, is a libel."

The indictment charges the defendant with the publication of a malicious libel which is stated to have consisted of a picture, a copy of which is set out in the indictment. It is not necessary to redefine libel in the indictment. It is sufficient that the indictment charges the publication of a libel and sets forth the picture constituting the libel and it is for the jury to say whether or not the picture is a libel within the definition, namely, whether the picture exposes Noyes to hatred, contempt, ridicule or obloquy or causes or tends to cause him to be shunned or avoided or has a tendency to injure him in his business or occupation. Neither is it necessary to allege specifically that the picture was a recognizable likeness. The indictment flatly alleges that the man shown in the picture is " a representation and figure of the said Frank B. Noyes." " Representation " is defined as " The act of representing to the mind or the view; the act of portraying, depicting or exhibiting, as in imagination, in a picture, or on the stage; portrayal." The Century Dict. & Cyc. " Figure " is defined as " The artificial representation of a form as in sculpture, drawing or painting, embroidery, etc.; especially the human body represented by art of any kind." The Century Dict. & Cyc. By the Code of Criminal Procedure, section 282, it is provided: " The words used in an indictment must be construed in their usual acceptation in common language, except words and phrases defined by law, which are to be construed according to their legal meaning."

The allegations puts in issue whether or not the picture is a portrayal and drawing of Noyes, and that means a recognizable likeness. If the pen and ink drawing is not a recognizable likeness, it is not a representation and figure, and the people would fail in their proof and the case against the defendant would fail. This is a question for the jury to pass upon.

The article printed on the same page with the picture and stated to be explanatory of it does not mention Noyes by name,

but the indictment alleges that the picture is the libel and whether the picture, explained or unexplained, is or is not a libel of Noyes is a question for the jury's determination.

The contention that the indictment should allege that it was shown to some one who knew Noyes is sufficiently answered by section 1343 of the Penal Law which provides: " To sustain a charge of publishing a libel, it is not necessary that the matter complained of should have been seen by another. It is enough that the defendant knowingly displayed it, or parted with its immediate custody, under circumstances which exposed it to be seen or understood by another person than himself."

The defendant further contends that the indictment is defective in that it does not allege malice or criminal intent on the part of the defendant. It has been held that criminal intent is a necessary element of the crime. People ex rel. Carvalho v. Warden, 144 App. Div. 24, 26 N. Y. Crim. 129; affd., 212 N. Y. 612. In my opinion, however, the indictment sufficiently charges the commission of the crime; it alleges that the defendant " did unlawfully and wickedly print and publish * * * a certain false, scandalous, malicious and defamatory libel."

The statute, after defining a libel as a malicious publication, by section 1341, provides, " A person who publishes a libel is guilty of a misdemeanor." The indictment charges that the defendant did publish a malicious publication and the charge is, therefore, made in the language of the statute, which is sufficient. People v. Welden, 111 N. Y. 569; Eckhardt v. People, 83 id. 462; Phelps v. People, 72 id. 334, 349; People v. Adams, 85 App. Div. 390, 393; People v. Herlihy, 66 id. 534, 540; People v. Seldner, 62 id. 357, 360; People v. Hulett, 39 N. Y. St. Repr. 646.

(2) The defendant raises the further objection that the indictment is bad for duplicity.

It is well established that an indictment may contain separate counts charging the commission of the same crime in a different

manner.   People v. Adler, 140 N. Y. 331, 10 N. Y. Crim. 554. It is equally well established that the commission of a crime in two different manners or by different means may not properly be alleged in one count.   Judge Haight in People v. Hartwell, 166 N. Y. 365, 15 N. Y. Crim. 377, says: " The provisions of section 278 of the Code of Criminal Procedure provide that the indictment must charge but one crime *and in one form*, except as in the next section provided.   That section provides that ' the crime may be charged in separate counts to have been committed *in a different manner* or by different means."

The Court of Appeals in the case last cited raises the question without determining it of the propriety of attacking an indictment by demurrer on the ground that it contains the commission of the offense by two different means.   Judge unauthorized union in one count of two charges alleging the Haight (at p. 366) says: " If may be that demurrer will not lie or remedy these defects.   Under subdivision 3 of section 323 of the Code of Criminal Procedure a demurrer may be interposed when ' more than one crime is charged in the indictment, within the meaning of sections 278 and 279.'   It may be that, under the provisions of this section, one crime stated by different means in the same count is not demurrable although prohibited by these sections."

In the indictment before me there is but one count charging one crime, namely, the publication of a libel of one Frank B. Noyes.   It is not necessary to determine whether the joinder in one count of allegations charging the commission of the crime by different means is demurrable because the count does not contain such allegations.

The indictment alleges that the defendant did publish a certain malicious libel " by then and there printing and publishing the same " in a certain magazine or periodical called " The Masses," " then and there edited, printed and published by them, the said Max Eastman and Arthur Young." ' The defendant contends that these allegations are bad for duplicity,

in that they charge the publication of a libel both by the means of printing and by reason of editing the periodical in which the alleged libel appeared. In my opinion, this is not a charge of the commission of the crime in more than one form in the same count. There is but one charge, namely, the publication of the libel, and the means employed are alleged to have been a cartoon in the magazine or periodical called " The Masses," and the manner in which committed is alleged to have been the printing in and delivering of that magazine. The allegation that " The Masses " was edited by the defendants does not add a different manner or means whereby it is charged that the libel was committed, and is equivalent to an allegation that the defendant, being the editor of a certain periodical or publication, did publish a malicious libel by printing and publishing the same and causing the same to be printed and published in that periodical.

The allegation that the defendant was the editor is merely a statement of the evidence, whereby the defendant's responsibility for the publication by the means and in the manner charged may be proven. The origin and the application of the rule are stated in Commonwealth v Morgan, 107 Mass. 199, 202, where Judge Colt says: " *When a libel* is sold in a bookseller's shop, by a servant of the bookseller, in the ordinary course of his employment; or *is published in a newspaper; the fact alone is sufficient evidence to charge* the bookseller, or *the proprietor of the newspaper*, with the guilt of its publication. This evidence, by the earlier English decisions, was held not to be conclusive, but the defendant was permitted to show, in exculpation, that he was not privy, nor assenting to, nor encouraging, the publication. See 1 Lead. Crim. Cas. 145; notes to Rex v. Almon, 5 Burr. 2686. Afterwards, such evidence was held conclusive, upon the ground that it was necessary to prevent the escape of the real offender behind an irresponsible party. Rex v Gutch, Mood. & Malk. 433; Rex v. Walter, 3 Esp. 21. In

both these cases the defendants offered to show that they were perfectly innocent of any share in the criminal publication, and that, although proprietors of the papers, they were living at a distance from London, the place of the publication, taking no share in the actual publication, and in one case confined by illness when the paper complained of appeared. It was ruled by Lord Kenyon and Lord Tenterden to be no defense. But now, by a recent English statute, a defendant is permitted to prove that such publication was made without his authority, consent or knowledge, and did not arise from want of due care or caution on his part. St. 6 & 7 Vict. c. 96."

The early decisions in this state followed the rule pronounced by Lord Kenyon in Rex v. Walter, 3 Esp. N. P. Cas. 21. In Andres v. Wells, 7 Johns. 260, it was held that an action for libel lies against the proprietor of a gazette though the publication was without his knowledge, Spencer, J., at page 263, saying: "It would be too much to say that any man might with impunity own and sustain a public newspaper, without any responsibility for the libel with which it might abound. The principle laid down by Lord Kenyon is salutary and essential." See also Dole v. Lyon, 10 Johns. 447; King v. Root, 4 Wend. 114, 136.

The rule of evidence has since been modified in this state by statute similar to the English act, and is now found in section 1344 of the Penal Law, as follows: "Every editor, or proprietor of a book, newspaper or serial, and every manager of a partnership or incorporated association, by which a book, newspaper or serial is issued, is chargeable with the publication of any matter contained in such book, newspaper or serial. But in every prosecution for libel the defendant may show in his defense that the matter complained of was published without his knowledge or fault and against his wishes, by another who had no authority from him to make the publication and whose act was disavowed by him as soon as known."

(3) The objection that the indictment does not contain a plain and concise statement of the act constituting the crime without unnecessary repetition, in conformity with the requirements of sections 275 and 276 of the Code of Criminal Procedure, is not well taken.

The tests found in the authorities are:

The indictment must both charge the crime and state the act constituting it. People v. Stark, 136 N. Y. 538, 541, 10 N. Y. Crim. 289; People v. Dumar, 106 id. 502, 8 N. Y. Crim. 263.

The act charged as the crime must be plainly and concisely set forth with such a degree of certainty as to apprise the defendant of the nature and character of the offense charged and of the facts which may be proved, to enable the defendant to prepare his defense; to enable the court to pronounce judgment upon a conviction according to the rights of the case, and to so identify the charge that the record of conviction or acquittal will serve as a bar to subsequent prosecution for the same offense. People v. Lammerts, 164 N. Y. 137, 144, 15 N. Y. Crim. 158; People v. Helmer, 154 id. 596, 600, 12 N. Y. Crim. 134; People v. Dimick, 107 id. 13, 29, 5 N. Y. Crim. 185.

The indictment meets all of these requirements. The demurrer is overruled.

Demurrer overruled.