(89 Misc. Rep. 596)

PEOPLE v. EASTMAN. •

(Court of General Sessions, New York County. March 16, 1915.)

1. LIBEL AND SLANDER ⬤⇒152—PROSECUTION—INDICTMENT—"LIBEL."

Under Penal Law (Consol. Laws, c. 40) § 1340, defining libel as a malicious publication by writing, printing, picturing, etc., which exposes any person to hatred, contempt, ridicule, or obloquy, an indictment which charges that the defendant published a malicious libel, consisting of a picture, which was set out in the indictment, is sufficient, without alleging that it exposed the person represented to hatred, contempt, ridicule, or obloquy.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 417, 419–424, 426, 427; Dec. Dig. ⬤⇒152.

For other definitions, see Words and Phrases, First and Second Series, Libel.]

2. LIBEL AND SLANDER ⬤⇒152—PROSECUTION—INDICTMENT—"REPRESENTATION"—"FIGURE."

In an indictment for libel, an allegation that a man shown in the picture alleged to be libelous is a representation and figure of N. is an allegation that the picture was a recognizable likeness of N., since a "representation" is the act of representing to the mind or view, the act of portraying, depicting, or exhibiting, as in imagination, in a picture, or on the stage, portrayal, and "figure" is defined as the artificial representation of a form, as in sculpture, drawing, or painting, especially the human body represented by art of any kind, and Code Cr. Proc. § 282, requires the words of an indictment, except those defined by law, to be construed in their usual acceptation in common language.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 417, 419–424, 426, 427; Dec. Dig. ⬤⇒152.

For other definitions, see Words and Phrases, First and Second Series, Representation.]

3. LIBEL AND SLANDER ⬤⇒141—PROSECUTION—APPLICATION OF LIBEL.

The fact that the explanatory article printed on the same page with the picture did not mention N.'s name, is no defense to the prosecution, if the likeness was that of N., since the libel charged was the publication of the picture, not the article.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 402; Dec. Dig. ⬤⇒141.]

4. LIBEL AND SLANDER ⬤⇒152—PROSECUTION—INDICTMENT—PUBLICATION.

Under Penal Law, § 1343, providing that, to sustain a charge of publishing a libel, it is not necessary that the matter complained of should be seen by another, but it is sufficient that the defendants knowingly displayed it or parted with its custody under circumstances which exposed it to be seen or understood by another person than himself, an indictment for libel by the publication of a picture, which did not state the

name of the person represented, need not allege that the picture was seen by some one who knew that person and recognized the likeness.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 417, 419–424, 426, 427; Dec. Dig. ☞152.]

5. LIBEL AND SLANDER ☞152—PROSECUTION—INDICTMENT—MALICE.

Under Penal Law, § 1341, making one who publishes a libel guilty of a misdemeanor, an indictment which alleges, in language of the statute defining libel, that the defendants did unlawfully and wickedly print and publish a certain false, scandalous, malicious, and defamatory libel, sufficiently alleges malice and criminal intent.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 417, 419–424, 426, 427; Dec. Dig. ☞152.]

6. INDICTMENT AND INFORMATION ☞128 — JOINDER OF COUNTS — DIFFERENT MEANS.

An indictment may contain separate counts charging the commission of the same crime in a different manner without being duplicitous.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 403–413; Dec. Dig. ☞128.]

7. INDICTMENT AND INFORMATION ☞125—DUPLICITY.

An indictment for libel, which charged that the defendants published the libel by then and there printing the same in a certain magazine then and there edited, printed, and published; by them, is not duplicitous as charging the commission of the crime in two different manners, since the charge that the defendants edited the magazine is only a statement of the evidence by which their responsibility for its publication is determined under Penal Law, § 1344, making every editor of a publication responsible for the matter published therein, but providing that it shall be a defense to show that it was published without his knowledge or fault by another, who had no authority from him to make the publication, and whose act was disavowed by him as soon as known.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. ☞125.]

8. LIBEL AND SLANDER ☞152—PROSECUTION—INDICTMENT—STATEMENT OF ACT.

An indictment stating that the grand jurors accused the defendants of the crime of publishing a libel, by publishing a cartoon representing the head of the Associated Press as poisoning the news, held to charge the crime and the act constituting it, so as to apprise the defendant of the offense with which he is charged, to enable the court to pass sentence, and so that the judgment thereon would be a bar to a subsequent prosecution for the same offense, and therefore to be sufficient under Code Cr. Proc. § 275, requiring the indictment to contain a plain and concise statement of the act constituting the crime without unnecessary repetition, and section 276, prescribing the form for an indictment.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 417, 419–424, 426, 427; Dec. Dig. ☞152.]

Max Eastman and another were indicted for libel, and the defendant Eastman demurs to the indictment. Demurrer overruled.

Charles A. Perkins, Dist. Atty., of New York City, for the People.
Gilbert E. Roe, of New York City, for defendants.

WADHAMS, J. The defendant Max Eastman has demurred to the indictment. The indictment alleges:

"The grand jury of the county of New York, by this indictment, accuse Max Eastman and Arthur Young of the crime of publishing a libel, committed as follows."

The indictment then recites that on the 26th of June, 1913, the Associated Press was a membership corporation having its principal office in the borough of Manhattan, city of New York, and formed for the purpose and engaged in the business of gathering throughout the United States for the use of its members information of such events as constitute domestic news, and of supplying such information to its members for publication by them in newspapers owned, managed, or controlled by them, to the aggregate number of 800 and upwards circulated throughout the United States to the aggregate number of more than 15,000,000 copies daily; that one Frank B. Noyes was on said day president of said corporation, engaged in supervising, directing, and controlling the business thereof. The indictment then alleges:

"And the said Max Eastman and Arthur Young, both late of the borough and county aforesaid, on the day and in the year aforesaid, at the borough and county aforesaid, well knowing the premises, did unlawfully and wickedly print and publish, and cause and procure to be printed and published, a certain false, scandalous, malicious, and defamatory libel of and concerning the said Frank B. Noyes, by then and there printing and publishing the same, and causing the same to be printed and published, in a certain magazine and periodical called 'The Masses,' then and there edited, printed, and published by them, the said Max Eastman and Arthur Young, and there having a circulation and being circulated, which said libel then and there consisted of a certain picture, entitled 'Poisoned at the Source.'"

Then follows a copy of a pen and ink picture representing the figure of a man, labeled "Associated Press," pouring from a bottle, labeled "Lies," into a reservoir of water, labeled "The News." By his side, on the rampart of the reservoir, are two other bottles, one overturned on its side, labeled "Poison," and on the darkened surface of the water within the reservoir are the words "Hatred of Labor Organization," "Suppressed Facts," "Slander," "Prejudice." Beyond the reservoir on either side are the buildings of a city, and in the background, on the top of a distant hill, against the horizon, are four telegraph or telephone poles. The indictment then alleges:

"The representation and figure of a man in which said picture was then and there a representation and figure of the said Frank B. Noyes"

—and that adjoining the picture and printed on the same page was an article headed "The Worst Monopoly," in which the Associated Press is several times mentioned, but which does not mention Noyes. The indictment, after alleging the innuendo of the picture and article, concludes:

"And by then and there delivering and causing to be delivered copies of the said magazine so containing such picture, and writing and copies of the said picture and writing, to a large number of persons, and, among others, to one Jackson S. Elliott, against the form of the statute," etc.

I will consider each of the grounds upon which the defendant demurs.

1. The defendant contends that the facts stated in the indictment do not constitute a crime, and urges two objections: First, that there is no allegation of a publication which exposes Noyes to hatred, contempt, ridicule, or obloquy; and, second, that there is no allegation of malice or criminal intent on the part of the defendant.

[1] The defendant argues that the indictment does not allege, either in the language of the statute or in any equivalent language, that the libel exposed Noyes to hatred, contempt, ridicule, or obloquy, or any fact upon which such inference may be drawn, in that it fails to state that the picture was a recognizable likeness of Noyes, that it resembles him in its features, that the explanatory article does not so explain the picture, nor refer to Noyes, and there is no allegation that the picture was published to or seen by any one who knew Noyes, or understood the picture to be a representation of him.

By section 1340 of the Penal Law libel is defined to be:

"A malicious publication, by writing, printing, picture, effigy, sign or otherwise than by mere speech, which exposes any living person, or the memory of any person deceased, to hatred, contempt, ridicule or obloquy, or which causes, or tends to cause any person to be shunned or avoided, or which has a tendency to injure any person, corporation or association of persons, in his or their business or occupation, is a libel."

The indictment charges the defendant with the publication of a malicious libel which is stated to have consisted of a picture, a copy of which is set out in the indictment. It is not necessary to redefine libel in the indictment. It is sufficient that the indictment charges the publication of a libel, and sets forth the picture constituting the libel, and it is for the jury to say whether or not the picture is a libel within the definition, namely, whether the picture exposes Noyes to hatred, contempt, ridicule, or obloquy, or causes or tends to cause him to be shunned or avoided, or has a tendency to injure him in his business or occupation.

[2] Neither is it necessary to allege specifically that the picture was a recognizable likeness. The indictment flatly alleges that the man shown in the picture is "a representation and figure of the said Frank B. Noyes."

"Representation" is defined as:

"The act of representing to the mind or the view; the act of portraying, depicting, or exhibiting, as in imagination, in a picture, or on the stage; portrayal." Century Dict.; Cyc.

"Figure" is defined as:

"The artificial representation of a form as in sculpture, drawing, or painting, embroidery, etc.; especially the human body represented by art of any kind." Century Dict.; Cyc.

By Code of Criminal Procedure, § 282, it is provided:

"The words used in an indictment must be construed in their usual acceptation, in common language, except words and phrases defined by law, which are to be construed according to their legal meaning."

The allegations put in issue whether or not the picture is a portrayal and drawing of Noyes, and that means a recognizable likeness. If the pen and ink drawing is not a recognizable likeness, it is not a representation and figure, and the people would fail in their proof, and the case against the defendant would fail. This is a question for the jury to pass upon.

[3] The article printed on the same page with the picture and stated to be explanatory of it does not mention Noyes by name; but the

indictment alleges that the picture is the libel, and whether the picture, explained or unexplained, is or is not a libel of Noyes, is a question for the jury's determination.

[4] The contention that the indictment should allege that it was shown to some one who knew Noyes is sufficiently answered by section 1343 of the Penal Law, which provides:

"To sustain a charge of publishing a libel, it is not necessary that the matter complained of should have been seen by another. It is enough that the defendant knowingly displayed it, or parted with its immediate custody, under circumstances which exposed it to be seen or understood by another person than himself."

[5] The defendant further contends that the indictment is defective, in that it does not allege malice or criminal intent on the part of the defendant. It has been held that criminal intent is a necessary element of the crime. People ex rel. Carvalho v. Warden, 144 App. Div. 24, 128 N. Y. Supp. 837, affirmed 212 N. Y. 612, 106 N. E. 1039. In my opinion, however, the indictment sufficiently charges the commission of the crime. It alleges that the defendant—

"did unlawfully and wickedly print and publish * * * a certain false, scandalous, malicious and defamatory libel."

The statute, after defining a libel as a malicious publication, by section 1341 provides:

"A person who publishes a libel is guilty of a misdemeanor."

The indictment charges that the defendant did publish a malicious publication and the charge is therefore made in the language of the statute, which is sufficient. People v. Welden, 111 N. Y. 569, 19 N. E. 279; Eckardt v. People, 83 N. Y. 462, 38 Am. Rep. 462; People v. Hulett, 39 N. Y. St. Rep. 646; People v. Adams, 85 App. Div. 390, 393, 83 N. Y. Supp. 481; People v. Herlihy, 66 App. Div. 534, 540, 73 N. Y. Supp. 236; People v. Seldner, 62 App. Div. 357, 360, 71 N. Y. Supp. 35; Phelps v. People, 72 N. Y. 334.

2. The defendant raises the further objection that the indictment is bad for duplicity.

[6] It is well established that an indictment may contain separate counts charging the commission of the same crime in a different manner. People v. Adler, 140 N. Y. 331, 35 N. E. 644. It is equally well established that the commission of a crime in two different manners or by different means may not properly be alleged in one count. Judge Haight in People v. Hartwell, 166 N. Y. at page 365, 59 N. E. at page 931, says:

"The provisions of section 278 of the Code of Criminal Procedure provide that the indictment must charge but one crime *and in one form*, except as in the next section provided. That section provides that 'the crime may be charged in separate counts to have been committed *in a different manner* or by different means.'"

The Court of Appeals in the case last cited raises the question, without determining it, of the propriety of attacking an indictment by demurrer on the ground that it contains the unauthorized union in one count of two charges alleging the commission of the offense by two

different means. Judge Haight (166 N. Y. at page 366, 59 N. E. at page 931) says:

"It may be that demurrer will not lie to remedy these defects. Under subdivision 3 of section 323 of the Code of Criminal Procedure a demurrer may be interposed when 'more than one crime is charged in the indictment within the meaning of section 278 or 279.' It may be that, under the provisions of this section, one crime stated by different means in the same count is not demurrable, although prohibited by these sections."

[7] In the indictment before me there is but one count, charging one crime, namely, the publication of a libel of one Frank B. Noyes. It is not necessary to determine whether the joinder in one count of allegations charging the commission of the crime by different means is demurrable, because the count does not contain such allegations.

The indictment alleges that the defendant did publish a certain malicious libel "by then and there printing and publishing the same" in a certain magazine or periodical called "The Masses," "then and there edited, printed, and published by them, the said Max Eastman and Arthur Young." The defendant contends that these allegations are bad for duplicity, in that they charge the publication of a libel both by the means of printing and by reason of editing the periodical in which the alleged libel appeared. In my opinion, this is not a charge of the commission of the crime in more than one form in the same count. There is but one charge, namely, the publication of the libel, and the means employed is alleged to have been a cartoon in the magazine or periodical called "The Masses," and the manner in which committed is alleged to have been the printing in and delivering of that magazine. The allegation that "The Masses" was edited by the defendants does not add a different manner or means whereby it is charged that the libel was committed, and is equivalent to an allegation that the defendant, being the editor of a certain periodical or publication, did publish a malicious libel by printing and publishing the same and causing the same to be printed and published in that periodical.

The allegation that the defendant was the editor is merely a statement of the evidence, whereby the defendant's responsibility for the publication by the means and in the manner charged may be proven. The origin and application of the rule are stated in Commonwealth v. Morgan, 107 Mass. 199, at page 202, where Judge Colt says:

"When a libel is sold in a bookseller's shop, by a servant of the bookseller, in the ordinary course of his employment, or is published in a newspaper, the fact alone is sufficient evidence to charge the bookseller, or the proprietor of the newspaper, with the guilt of its publication. This evidence, by the earlier English decisions, was held not to be conclusive; but the defendant was permitted to show, in exculpation, that he was not privy, nor assenting to, nor encouraging, the publication. See 1 Lead. Crim. Cas. 145; notes to Rex v. Almon, 5 Burr. 2686. Afterwards such evidence was held conclusive, upon the ground that it was necessary to prevent the escape of the real offender behind an irresponsible party. Rex v. Gutch, Mood. & Malk. 433. Rex v. Walter, 3 Esp. 21. In both these cases the defendants offered to show that they were perfectly innocent of any share in the criminal publication, and that, although proprietors of the papers, they were living at a distance from London, the place of the publication, taking no share in the actual publication, and in one case confined by illness when the paper complained of

appeared. It was ruled by Lord Kenyon and Lord Tenterden to be no defense. But now, by a recent English statute, a defendant is permitted to prove that such publication was made without his authority, consent or knowledge, and did not arise from want of due care or caution on his part. St. 6 & 7 Vict. c. 96."

The early decisions in this state followed the rule pronounced by Lord Kenyon in Rex v. Walter, 3 Esp. N. P. Cas. 21. In·Andres v. Wells, 7 Johns. 260, at page 263 (5 Am. Dec. 267), it was held that an action for libel lies against the proprietor of a gazette, though the publication was without his knowledge; Spencer, J., saying:

"It would be too much to say that any man might with impunity own and sustain a public newspaper, without any responsibility for the libel with which it might abound. The principle laid down by Lord Kenyon is salutary and essential."

See, also, Dole v. Lyon, 10 Johns. 447, 6 Am. Dec. 346; King v. Root, 4 Wend. 114, 136 (21 Am. Dec. 102).

The rule of evidence has since been modified in this state by statute similar to the English act, and is now found in section 1344 of the Penal Law, as follows:

"Every editor, or proprietor of a book, newspaper or serial, and every manager of a partnership or incorporated association, by which a book, newspaper or serial is issued, is chargeable with the publication of any matter contained in such book, newspaper or serial. But in every prosecution for libel the defendant may show in his defense that the matter complained of was published without his knowledge or fault and against his wishes, by another who had no authority from him to make the publication and whose act was disavowed by him so soon as known."

[8] 3. The objection that the indictment does not contain a plain and concise statement of the act constituting the crime without unnecessary repetition, in conformity with the requirements of sections 275 and 276 of the Code of Criminal Procedure, is not well taken. The tests found in the authorities are:

The indictment must both charge the crime and state the act constituting it. People v. Stark, 136 N. Y. 538, 541, 32 N. E. 1046; People v. Dumar, 106 N. Y. 502, 13 N. E. 325.

The act charged as the crime must be plainly and concisely set forth, with such a degree of certainty as to apprise the defendant of the nature and character of the offense charged and of the facts which may be proved, to enable the defendant to prepare his defense, to enable the court to pronounce judgment upon a conviction according to the rights of the case, and to so identify the charge that the record of conviction or acquittal will serve as a bar to subsequent prosecution for the same offense. People v. Lammerts, 164 N. Y. 137, 144, 58 N. E. 22; People v. Helmer, 154 N. Y. 596, 600, 49 N. E. 249; People v. Dimick, 107 N. Y. 13, 29, 14 N. E. 178.

The indictment meets all of these requirements.

The demurrer is overruled.